**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**TREVON GROSS,**<br><br>       **Defendant.** | **HON. ALISON J. NATHAN U.S.D.J.**<br><br>**Criminal No. 15-CR-769 (AJN)** |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT**
**TREVON GROSS'S MOTIONS TO SEVER AND TO TRANSFER VENUE**

---

**KROVATIN KLINGEMAN LLC**
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
Attorneys for Defendant
Trevon Gross

**On the Brief:**

HENRY E. KLINGEMAN, ESQ.
KRISTEN M. SANTILLO, ESQ.

**PRELIMINARY STATEMENT**

On September 19, 2016, counsel for defendant Trevon Gross moved to transfer venue to the District of New Jersey.  *See* Dkt. No. 196.  On September 30, 2016, counsel also moved to sever Mr. Gross's case from that of his co-defendants due to prejudicial evidence the government intends to introduce against Mr. Gross's co-defendants that would be inadmissible against Mr. Gross at a separate trial.  *See* Dkt. No. 229.  By agreement of the parties, the government responded to both motions in one opposition.  *See* Dkt. No. 253.  This memorandum offers further support for Mr. Gross's motions and responds to the government's opposition.  For the reasons set forth below, severance is warranted and the case should be transferred to the District of New Jersey.

**SEVERANCE IS WARRANTED BECAUSE, EVEN IF THE GOVERNMENT COULD PROVE AN UNCHARGED CONSPIRACY, MR. GROSS HAD WITHDRAWN BEFORE THE PREJUDICIAL STATEMENTS WERE MADE**

Mr. Gross has moved for a severance on the grounds that the government intends to introduce prejudicial statements of his co-defendants that would be inadmissible against him if he were to be tried alone, and Mr. Gross will not have the opportunity to cross-examine his co-defendants regarding these statements at a joint trial.  *See* Dkt. No. 229.  In response, the government has argued that the statements the government seeks to introduce would be "classic co-conspirator statements," and thus they would be admissible even at a trial against Mr. Gross, negating the need for severance.  The government is wrong.

In support of the severance motion, counsel has offered examples of statements that the government is likely to seek to introduce against Mr. Gross referring to payments to him as "bribes."  *See* Dkt. No. 229, Exs. 1-2 (containing two emails dated November 26-27, 2016 sent from defendant Michael Murgio to defendant Anthony Murgio with the subject "Bribery Law," stating "Trevon [Gross] may have violated the law due to his taking a donation from Kapcharge"

1

and quoting the language of the bank bribery statute); Ex. 3 (chat conversation after 6:00 p.m. on November 25, 2014 where one alleged co-conspirator uses the term "bribery" in the same conversation where defendant Anthony Murgio refers to a proposed payment to Mr. Gross as a "donation.")  Even if the government could establish that at some point, Mr. Gross was involved in a conspiracy with his co-defendants, which is disputed, these statements were all made at a time when Mr. Gross had clearly and unequivocally renounced any involvement in any further business with his co-defendants.  Thus these statements were not made "during and in furtherance" of the alleged conspiracy, and they would be inadmissible against Mr. Gross as co-conspirator statements.  Due to the enormous prejudice from these statements, a severance is warranted.

Federal Rule of Evidence 801(d)(2)(E) defines as non-hearsay statements made "by the party's coconspirator during and in furtherance of the conspiracy."  Statements made by co-conspirators after the defendant has withdrawn are inadmissible as co-conspirator statements. *See United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988) ("once a party withdraws from a conspiracy subsequent statements by a coconspirator do not fall within this exemption.")

In order to demonstrate withdrawal from a conspiracy, a defendant must show affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach co-conspirators.  *See Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.*, 288 F.Supp.2d 325, 328-329 (E.D.N.Y.2003).  *See also United States v. Greenfield*, 44 F.3d 1141, 1149–50 (2d Cir. 1995) ("either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators is sufficient to establish withdrawal."); *United States v. Dallas*, 229 F.3d 105, 110 (2d Cir.2000) (same); *United States v. Gigante*, 982 F. Supp. 140, 171 (E.D.N.Y. 1997), aff'd, 166 F.3d 75 (2d

2

Cir. 1999) (To establish withdrawal, "[a] defendant must: (1) take affirmative action to show that he has truly broken with that part of the criminal enterprise to which he agreed to participate; and (2) communicate his abandonment to his co-conspirators.")  To the extent that any alleged conspiracy existed with respect to Mr. Gross and his co-defendants, Mr. Gross clearly manifested a withdrawal by the time the statements at issue were made.

While the statements included with Mr. Gross's motion for severance were made on November 25, 2014 after 6:00 p.m., by at least November 24, 2014, Mr. Gross had informed his co-defendants and their alleged co-conspirators that he no longer wished to engage in business with them.  In a message that was communicated to Mr. Gross's co-defendants, Jose Freundt a likely government witness, referring to Mr. Gross, said "I asked him if the relationship between our group and his is salvageable to which he responded 'no' in not sooo little words."  *See* Ex.  4 at 9.  By 2:30 p.m. on November 25, 2014, Mr. Gross had also sent co-defendant Anthony Murgio a text message stating:  "Anthony:  you know the status of things.  We are not moving forward together."  *See* Ex.  5.  Additionally, by 5:00 p.m. on November 25, 2014, Mr. Gross had informed all of the members of the Collectables Club who had previously been members of the Board of Directors of the Hope FCU:  "I have received your multiple requests for a special board meeting. Unfortunately, as all of you are aware, as non-members of the Credit union, you have no standing on the board to request a board meeting."  *See* Ex. 6.

All of these statements were affirmative actions on Mr. Gross's part that unequivocally demonstrated that he had broken ties with his co-defendants and their alleged co-conspirators, they were communicated in a manner reasonably calculated to reach his alleged co-conspirators, and they indeed did reach his alleged co-conspirators.  Accordingly, the statements made by Mr. Gross's co-defendants and their co-conspirators following his withdrawal from any alleged

conspiracy would be inadmissible against Mr. Gross as co-conspirator statements because they were not made during and in furtherance of any alleged conspiracy. *See United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988). The government's argument that severance is not warranted because the prejudicial evidence would be admissible against him even in a separate trial is thus unfounded.

As the Advisory Committee Notes to Rule 14 make clear a "defendant may be prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice." This case presents precisely those facts, and, for the reasons set forth in the severance motion, a severance is warranted.

## IN ADDITION TO SEVERANCE, VENUE SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW JERSEY

Despite the fact that nearly all of the relevant events in this case took place in New Jersey and critical witnesses and evidence are in New Jersey, the government argues that Mr. Gross's motion to transfer venue to New Jersey should be denied on several grounds, none of which has merit.

### 1.  The Timing of the Motion Should Not Preclude a Transfer of Venue

First, the government argues that Mr. Gross's motion to transfer venue is untimely. But Mr. Gross raised the problematic issue of venue early in the case. On May 25, 2016, counsel for Mr. Gross requested a bill of particulars from the government regarding what acts Mr. Gross was alleged to have committed in the Southern District of New York. The government declined to provide any additional information, and Mr. Gross moved for a bill of particulars relating to the question of venue on June 18, 2016, the deadline for motions set by the Court. It was not until

4

the government responded on July 15, 2016 that the government provided any details on its theory for venue. The government clarified that it rooted venue in a wire that was not initiated in or sent to the Southern District of New York, but rather passed through a bank in New York on its way from Florida to New Jersey through no volitional acts of Mr. Gross or his co-defendants. The government also grounded venue on an email in which nothing of substance was discussed that had not even been produced to defense counsel until after the government filed its opposition brief. In reply, Mr. Gross promptly asked for further particulars related to the venue issue, and requested leave to file a motion to dismiss based on venue.

Mr. Gross awaited a response from the Court before proceeding, but considering the approaching trial, counsel filed the motion to transfer venue based on the overwhelming connections to the District of New Jersey and the tenuous to non-existent connections to the Southern District of New York identified by the government. *See* Dkt. No. 196. In light of the procedural history of the case, including the months following Mr. Gross's indictment in which the government provided no information on its theory of venue, the delay in filing the motion to transfer venue should not preclude the Court's consideration of the issue on the merits.

In any event, due to the government's recent discovery productions, counsel for defendant Anthony Murgio has requested that the trial be delayed for several months. The proximity of the trial date should thus not serve as an impediment to the fair consideration of Mr. Gross's motion to transfer venue, as trial could proceed against Mr. Gross even in New Jersey within that timeframe.

**2. In a Severed Trial, All Factors Weigh In Favor of Transfer of Venue to New Jersey**

The government also weighs the factors courts traditionally consider when deciding whether transferring venue is appropriate, and contends that these factors do not weigh in favor of transfer of venue. These factors include:

> (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

As set forth in the motion to transfer venue, *see* Dkt. No. 229, all of these factors weigh in favor of transfer of venue to New Jersey. Notably, in opposing the motion, the only witnesses the government has pointed to who are based in New York are the alleged victims of crimes with which defendant Anthony Murgio alone is charged that are unconnected to the bribery count, even as against Anthony Murgio. Since, as set forth above, the case against Mr. Gross should be severed from that of his co-defendants, the location of these witnesses does not weigh in favor of trial in New York when all other factors point in favor of trial in New Jersey.

The government also seeks to trivialize the distance between New Jersey and New York. But in doing so, the government ignores the compelling Constitutional reasons for holding the trial in New Jersey. The Sixth Amendment to the Constitution provides that the accused in a criminal prosecution has the right to be tried in the "district wherein the crime shall have been committed." Here, Mr. Gross is accused of breaching his fiduciary duty to a community-based credit union in Lakewood, NJ, and all of the actions Mr. Gross is alleged to have engaged in that the government will argue amount to "corruptly soliciting" or "corruptly accepting" payments,

6

the essential elements of the alleged crime, took place in New Jersey.  The conduct for which

Mr. Gross faces trial is thus distinctly local.  Given the absence of any meaningful connection to

the Southern District of New York this factor weighs heavily in favor of trial in New Jersey.

The government also unduly minimizes the significant geographic challenges in a trial in

the Southern District of New York.  In addition to Mr. Gross, six volunteer members of the board

of directors of the Hope FCU, the treasurer of the Hope Cathedral and the CEO of the Hope FCU

after Mr. Gross all live in and around Jackson, New Jersey.  The government has indicated that it

intends to call nearly all of these witnesses, and they will also be crucial defense witnesses

because they were aware of the transaction between the Collectables Club and the Hope FCU

and approved it.  Finally, there are numerous character witnesses in Jackson, NJ.  In a severed

trial, these witnesses would likely constitute the majority of the witnesses at trial and no

witnesses from the Southern District of New York would be called to testify.

While Jackson, NJ is theoretically an hour and half drive from Manhattan "without

traffic," "without traffic" is a non-existent state of affairs on any drive from Southern New Jersey

to Manhattan and this round-trip could easily take four to five hours.  There are no comparable

traffic patterns in the drive from Jackson to Trenton, as the government suggests.  The

government also notes that there is a New Jersey transit terminal in Lakewood, NJ, but the bus

from Lakewood to Port Authority takes nearly two hours in the theoretical "without traffic"

situation, and that does not account for the additional travel time to the courthouse from the Port

Authority.  The government's suggestion that Newark Airport is more convenient to Manhattan

than Trenton also ignores the reality of traffic patterns into Manhattan.  Jackson, located near the

Jersey Shore, is sufficiently far from Manhattan that the logistics of the majority of witnesses

having to travel to Manhattan for a trial that has no connection to Manhattan should not be so easily brushed aside, as the government attempts to do.

Remarkably, the government cites its own burden in having to travel the very same distance to Southern New Jersey for a trial in Trenton that the majority of the witnesses will have to make as a factor weighing in favor of keeping the trial in the Southern District of New York. But the government's burden of traveling to the district where the crime it alleges actually took place should not outweigh the Constitutional rights of Trevon Gross and the convenience of the majority of the witnesses. Since, in a severed trial, all of the factors weigh in favor of a transfer of venue to New Jersey, we respectfully request that Mr. Gross's motion to transfer venue be granted.

**<u>CONCLUSION</u>**

For the foregoing reasons, the defendant Trevon Gross respectfully requests that the Court grant his motions to sever and to transfer venue.

Respectfully submitted,

s/ Kristen M. Santillo

_____
KRISTEN M. SANTILLO, ESQ.
*Attorney for Defendant*
*Trevon Gross*

Dated:  October 11, 2016

8
