**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**TREVON GROSS,**<br><br>    **Defendant.** | **HON. ALISON J. NATHAN U.S.D.J.**<br><br>**Criminal No. 15-CR-769 (AJN)** |

---

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S SECOND**
**MOTION IN LIMINE**

---

> **KROVATIN KLINGEMAN LLC**
> 60 Park Place, Suite 1100
> Newark, New Jersey 07102
> (973) 424-9777
> Attorneys for Defendant
> Trevon Gross

**On the Brief:**

HENRY E. KLINGEMAN, ESQ.
KRISTEN M. SANTILLO, ESQ.

**PRELIMINARY STATEMENT**

The government has moved *in limine* seeking rulings:  1) that Trevon Gross's withdrawal argument does not preclude the Government from either offering evidence that post-dates the falling out between Trevon Gross and the members of the Collectables Club in late 2014, or referring to such evidence in opening statements; 2) to admit evidence of Trevon Gross's failure to produce documents responsive to a grand jury subpoena and his failure to preserve such documents; 3) to preclude evidence relating to the determination by the National Credit Union Administration ("NCUA") that Kapcharge was in the field of membership; and 4) to permit NCUA testimony concerning federal laws and regulations relating to the operation of federal credit unions, or to have the jury instructed on the same.  All of these motions are without foundation and should be denied, and we address each one in turn.

1. **No Evidence Related to Any Activities of the Collectables Club After November 2014 Should Be Introduced As Evidence Against Trevon Gross**

The government argues that evidence related to actions of the Collectables Club in late 2014 and 2015 can be introduced against Trevon Gross even though the government cites the evidence that Trevon Gross severed all ties with the Collectables Club in November 2014 and expressly and repeatedly rejected all attempts by the Collectables Club to continue doing business with Hope FCU.  Because none of the actions or statements of the Collectables Club in late 2014 and 2015 were in furtherance of any alleged conspiracy with Trevon Gross, this evidence should be precluded as against Trevon Gross.

The conspiracy the government has charged is unwieldy.  The government has alleged a multi-object conspiracy in Count 3, with the objects of:  1) making corrupt payments to Trevon Gross with the attempt to influence him; 2) Trevon Gross receiving payments with an attempt to

1

be influenced; 3) obstructing the examination of Hope FCU; and 4) making false statements to the NCUA.  The factual predicate for these charges, as alleged in the Indictment, is that Anthony Murgio, Yuri Lebedev, and members of the Collectables Club sought to take over Hope FCU to facilitate their unlawful bitcoin exchange.  *See* S6 Indictment, ¶¶ 12 and 13.  There are no allegations in the Indictment about what Pastor Gross's intent was for entering into this conspiracy, as he had no role in any bitcoin exchange.

The conspiracy the government describes in its motion *in limine* is much different than the one described in the indictment, and it is in essence a conspiracy to process ACH transactions for Kapcharge.  This is not the charged conspiracy, and we will likely seek a multiple conspiracies jury instruction as the government's case unfolds.  *See United States v. Aracri*, 968 F.2d 1512, 1520 (2d Cir. 1992) (the judge "properly instructed the jury that it must acquit a defendant if it found that the defendant was a member of a separate conspiracy other than the conspiracy charged in the indictment and [did] not find ... that such defendant was a member of the conspiracy charged in the indictment.")

The government does not seem to dispute that Trevon Gross in fact severed all ties with all members of the Collectables Club in late November 2014, including Anthony Murgio and Yuri Lebedev.  The government just disputes whether this had the effect of severing the conspiracy when the members of the original alleged conspiracy forked into two groups after November 2014 and pursued different endeavors.  According to the government, the Collectables Club continued to try to take over credit unions to further their unlawful bitcoin exchange, and Trevon Gross, Kapcharge and others continued to try to process ACH transactions.

But after Trevon Gross and the Collectables Club severed ties in November 2014, they had no common goals and nothing that the Collectables Club members did was designed to

further any joint goals of the conspiracy.  While Trevon Gross did continue working with

Kapcharge in late 2014 and early 2015, this had nothing to do with Coin.mx, any efforts to

facilitate an unlawful bitcoin exchange scheme, or efforts to place members of the Collectables

Club on the board of Hope FCU.  Kapcharge had an entirely separate business from Coin.mx that

did not involve bitcoin exchanges at all, and Trevon Gross's work with Kapcharge and Charles

Blue was to further the business relationship with Kapcharge and Hope FCU separately and

independently from any business of the Collectables Club or Coin.mx.  In fact, the legacy board

members of the Hope FCU continued to stay on the board of the Hope FCU.  The government's

argument that Pastor Gross continued to be a part of the conspiracy with the Collectables Club

because he continued to do business with Kapcharge is therefore unavailing.

The government seeks to introduce evidence of post-fallout statements of the members of

the Collectables Club against Trevon Gross.  These statements were not made during or in

furtherance of any conspiracy with Trevon Gross and in fact they were made expressly because

Trevon Gross walked away from the Collectables Club.[1]  Anthony Murgio and the other

members of the Collectables Club came up with an entirely new scheme to try to mislead the

NCUA, and Trevon Gross played no role in that whatsoever.  He did not know about their plan,

and he did not agree to embrace the goals of their scheme, which were directly at odds with his

own goals of staying with the credit union and bringing it into compliance.  The government has

not identified any specific evidence or statements it seeks to introduce in its opening against

Trevon Gross.  We request the right to review this evidence in advance, and make our objections

---

[1] Pastor Gross has already moved for a severance because these statements, while they could possibly be admissible against Yuri Lebedev, are inadmissible against Gross and they are highly prejudicial.  The Court has denied that severance motion.  We understand that the Court is resolute that no severance will be granted in this case, but raise the issue again to preserve the record as the government is now seeking to introduce precisely the type of prejudicial evidence addressed in the severance motion against Trevon Gross.

because the government's argument that Trevon Gross's continued involvement with Kapcharge somehow establishes his continued involvement in a conspiracy with the Collectables Club is untenable.

2. **The Government's Eleventh Hour Effort to Inject Evidence Related to An Alleged Failure to Properly Respond to a 2015 Subpoena Request or Preserve Emails Should Be Denied**

The government also seeks to introduce evidence related to Trevon Gross's alleged failure to produce documents responsive to a grand jury subpoena in August 2015 and his alleged failure to preserve his Hope FCU emails. There is no basis whatsoever to introduce such evidence. Trevon Gross and the Hope FCU were both served with grand jury subpoenas in August 2015, and at the time they were represented by the same lawyer, Edward Washburne. That attorney began responding to the subpoena, and Trevon Gross supplied emails to the credit union, the custodian of these records, to be produced by the credit union. The subpoena asked for specific items and those were provided.

Around the same time, the government informed Trevon Gross that he was a target of the investigation, and that he should seek separate counsel. Another lawyer for the credit union, Rubin Sinins, also began representing the credit union. Sinins, the new counsel for the credit union, then proceeded to produce all emails from the credit union, which included the emails from Trevon Gross's email accounts. *See* Exhibit A. The government has had this production since at least September 2015, and it is clear that emails in this production were produced from Trevon Gross's account. *Id*. The government has never once asked Trevon Gross's counsel for additional documents or given any indication that the subpoena response by the credit union was inadequate. The government also did not give any 404(b) notice that it intended to raise this issue until the eve of trial. The government should be precluded from raising it now.

4

The government also claims that Pastor Gross failed to preserve emails, and it seeks to introduce evidence of this at trial.  The NCUA took control of all the Hope FCU email accounts on the Dreamhost server, including Trevon Gross's Hope FCU account, in October 2015.  The government thereafter issued a search warrant to Dreamhost and obtained and produced Trevon Gross's emails from his Hope FCU email account in April 2016.  The government did not raise any question of whether these emails had been properly preserved until now, and provided no 404(b) notice that it intended to do so.

The government has only raised this issue now in response to defense counsel's request for an adverse inference instruction because the NCUA took control of all Hope FCU emails in October 2015, and the emails of the CEO of the credit union, Charles Blue, and other former board members were not preserved.[2]  While the government has now claimed that Pastor Gross did not preserve emails, the government has not identified any documents requests or preservation orders from the NCUA or the government that Pastor Gross, who at all times after September 2015 was represented by counsel, did not abide by.  And as noted above, the government never informed defense counsel that the subpoena response containing Pastor Gross's emails from the credit union, who was the custodian of these documents, was inadequate or had to be supplemented.

Without any evidentiary support, the government also claims that evidence shows that Pastor Gross deleted the Hope FCU domain name in March 2016.  But all access to the Hope FCU accounts at Dreamhost was turned over to the NCUA in October 2015 and had been in the NCUA's possession for over 5 months by March 2016.  While the Hope Cathedral might not have renewed the contract with Dreamhost in March 2016 because there was no reason to renew

---

[2] Based on the government's motion, it appears that those emails were in fact not preserved by the NCUA.

it since the email accounts had already been turned over to the NCUA, the credit union no longer existed and nobody at Hope Cathedral could access the documents anyway, there was nothing that Pastor Gross did or could have done to actually interfere with the data that was stored. The NCUA had long ago blocked access to the accounts.

The government also suggests nefarious intent from Pastor Gross's failure to turn over information about the accounts related to the Collectables Club members to the NCUA, but those accounts had been deactivated in 2014, long before the conservatorship took place in October 2015. And in any event, according to the government, those accounts all still have data so Pastor Gross did nothing to interfere with them.

In sum, the government's belated attempt to introduce evidence related to alleged inadequacies in Pastor Gross's subpoena response in 2015 or his alleged failure to preserve documents pursuant to a duty that has not been identified should be denied. The government never served 404(b) notice and it is the eve of trial. Moreover, there is no factual basis to support such evidence. Finally, any such evidence would be substantially more prejudicial than probative and unduly confusing, particularly since there were multiple different law firms and government agencies involved in the subpoena response and the NCUA conservatorship. It would take a trial within a trial that would be fraught with privilege concerns and the likely need for forensic expert testimony to determine whether any duties were in fact violated, much less what import to give them. For these reasons, the time has long since passed to inject these issues into the trial.

6

3. **Evidence Relating To The NCUA's Decision That Kapcharge Was In the Field of Membership Is Highly Relevant and Admissible, And There Is No Danger of Unfair Prejudice or Juror Confusion**

The government seeks to preclude evidence that the NCUA determined that Kapcharge was in the field of membership, arguing that it is irrelevant because the government does not need to show actual reliance to prove a false statement was made, and the evidence is unfairly prejudicial and confusing. The government's arguments fail. Field of membership issues are highly relevant to this case, and there is nothing about this evidence that would be unduly prejudicial or confusing.

First, field of membership issues are relevant to all aspects of this case. The government has alleged that Pastor Gross corruptly let members of the Collectables Club join the board, which was wrongful in part because they were not in the field of membership. The government has also alleged that Kapcharge was not properly in the field of membership because it initially only had a virtual office in Lakewood, NJ, though it later rented a physical office. One of the pivotal moments in the case was when the NCUA determined that the Collectables Club and Kapcharge were not in the field of membership. While Hope FCU abandoned any attempts to establish that the Collectables Club was in the field of membership, the Hope FCU appealed the determination that Kapcharge was in the field of membership and Kapcharge took many steps towards establishing and proving its connections to New Jersey including registering to do business in New Jersey. These steps show a commitment to follow the process and to actually establish a presence in New Jersey.

Additionally, the NCUA did not just accept the representations of the Hope FCU that Kapcharge was in the field of membership. It was not a vulnerable victim, as the government now argues. The NCUA reviewed the incorporation documents and "verified" that Kapcharge

had a physical location in New Jersey, which included doing a site visit to the Riviera Suites to confirm that Kapcharge actually had a presence there. *See* Ex. B, 3521-03. This evidence is highly relevant to Kapcharge's efforts to establish an actual presence in New Jersey, which is a critical disputed issue in the case. It also demonstrates that many of the statements that the government claims were false statements were not even material, as the NCUA did not rely upon any Fincen registrations at all to determine that Kapcharge was a business in the field of membership. Given the highly probative nature of this evidence, the government's arguments that it would be "too confusing" for the jury fail.

4. **The Government Should Not Be Permitted to Elicit Evidence About NCUA Statutory and Regulatory Provisions, Because the Relevant Question Is Whether Trevon Gross Had a Corrupt Intent**

The government seeks to introduce a laundry list of NCUA statutes and regulations. But this is a bribery, corrupt obstruction and false statements case, and not a case about record keeping or regulatory violations. The critical issue in this case is whether Pastor Gross voluntarily, intentionally and deliberately accepted a corrupt payment, obstructed a federal examination or made a materially false statement. The case is not about whether he dotted every i or crossed every t.

The full text of the Federal Credit Union Act is 93 pages. *See* https://www.ncua.gov/Legal/Documents/fcu_act.pdf. There are 97 subchapters to the NCUA regulations with numerous subparts to each subchapter. http://www.ecfr.gov/cgi-bin/text-idx?SID=143818c03e4ab1f8cc645ad7afc56764&mc=true&tpl=/ecfrbrowse/Title12/12cfrv7_02.tpl#700. Whether Pastor Gross knew about and followed the letter of each and every rule is not relevant to whether he acted deliberately, intentionally and corruptly. For instance, it is not relevant whether there is a rule that someone with a criminal conviction should not be involved

8

in the operations of a credit union. It is only relevant whether Pastor Gross knew that the person had a criminal conviction, knew that he had a duty not to allow someone with a criminal conviction to work at the credit union, and intentionally violated that rule.

To instruct the jury on numerous statutes and regulations is also needlessly confusing and prejudicial. The jury should not be deliberating about whether Pastor Gross violated the letter of NCUA statutes and regulations for which there is no criminal penalty. They should be deliberating whether he acted deliberately, intentionally and corruptly. We therefore seek to exclude this evidence under both Rule 401 and Rule 403.

Respectfully submitted,

/s/ Kristen M. Santillo

KRISTEN M. SANTILLO, ESQ.
*Attorney for Defendant*
*Trevon Gross*

Dated:  February 9, 2017

9