

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 9, 2017

**By ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   **United States** v. **Yuri Lebedev & Trevon Gross**,
>         S6 15 Cr. 769 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in response to defendant Trevon Gross's letter dated February 9, 2017 letter ("2/9/17 MIL Ltr.") in support of his Second Motions *in Limine*, which seeks to preclude (1) witness testimony describing the payments made by Collectables Club and Kapcharge to Gross as "bribes"; and (2) evidence of Gross's "lifestyle" and finances.  For the following reasons, Gross's motions should be denied.

**I.**     **Statements of Co-Conspirators Regarding the Corrupt Nature of the Payments Is Direct Evidence of Lebedev's and Gross's Guilt**

Gross argues that the Government should be precluded from introducing any statements that the corrupt payments made by Collectables Club and Kapcharge were ethical, illegal, or "bribes."  The defense's motion should be denied in part as moot, and in part as without merit.

With regard to the anticipated testimony of Jennifer Wotherspoon, who worked as a customer service manager for Coin.mx out of its Tallahassee, Florida office, the Government does not intend to elicit testimony regarding her understanding of the payments that she understood Anthony Murgio made to Gross in order to take over control of HOPE Federal Credit Union ("HOPE FCU").  The Government agrees that because she is not a member of the conspiracy to make and receive corrupt payments and to obstruct and make false statements to the NCUA, and had nothing to do with those payments, her characterization of those payments would not be properly admissible as co-conspirator statements under Rule 801(d)(2)(E).

Hon. Alison J. Nathan
February 9, 2017
Page 2

Nevertheless, the Government does intend to elicit from Ms. Wotherspoon statements Anthony Murgio made to her about why he and others sought to take control of HOPE FCU, and why neither she nor Anthony Murgio could serve on the board of HOPE FCU.  Such statements were made in furtherance of the wire fraud and bank fraud conspiracy (of which Murgio, Lebedev, and Ms. Wotherspoon were all members), and are direct evidence of the existence of the conspiracy and the motive of the co-conspirators underlying that conspiracy.  Such testimony is highly relevant to the fraud charges against Lebedev because it gives proper context to why a Florida-based bitcoin exchange sought to engage a New Jersey-based credit union in the first instance—which was to avoid the difficulties with banks that likewise motivated the wire fraud and bank fraud.  *See, e.g.*, *United States* v. *Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009) (evidence was relevant and admissible direct evidence where it showed that the defendant and a co-conspirator "were partners during the charged conspiracy" and established why the defendant was "motivated" to participate in the conspiracy).

Gross's argument proves too much, however, in the context of his desire to exclude statements made by his co-conspirators—including Timothy Ellrich, Jose Freundt, Ricardo Hill, and others—who conspired with him to effectuate their plan to have Gross receive the bribes, and to hide material facts regarding those payments from the NCUA.  As this Court has recognized, to act "corruptly" in the context of 18 U.S.C. § 215 means to act with "the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.  The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefits to oneself or some profit or benefit to another."  (9/19/16 Order (ECF No. 198) 19-20 (quoting *United States* v. *McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990)).  One way in which the Government intends to prove this corrupt intent—for those who made the payments, including Lebedev (the substantive § 215(a)(1) charge), for Gross who received those payments (the substantive § 215(a)(2) charge), and for the group who conspired together to effectuate the arrangement (the § 371 conspiracy charge)—is to show that the co-conspirators understood that the payments were made in furtherance of a "quid pro quo bribery arrangement," that is, to show that Gross in fact relinquished control over HOPE FCU "*in exchange for more than $150,000 in bribes.*"  (ECF No. 198 at 22 (emphasis in original)).

Thus, the contemporaneous statements by any of the individuals affiliated with Collectables Club, Kapcharge, and HOPE FCU regarding the nature of the payments at issue—and whether they were in fact bribe payments to effectuate a quid-pro-quo arrangement—are admissible under Rule 801(d)(2)(A) and (E).  These include, for example, Lebedev's contemporaneous statements to Murgio in which he notes his own belief that money was influencing Gross's decisions, and Freundt's contemporaneous statement to Collectables Club board members that the payments made to Gross constituted "bribery."  These statements are direct evidence of the corruption on the part of the co-conspirators, and as such are admissible evidence.  *See United States* v. *Ford*, 435 F.3d 204, 213 (2d Cir. 2006) (acknowledging that "[t]he recipient's 'awareness' that the donor gave something of value for the purpose of

Hon. Alison J. Nathan
February 9, 2017
Page 3

influencing the recipient might well constitute strong circumstantial evidence that the recipient acted with the requisite culpable state of mind in accepting the item").

In addition, opinions by Government witnesses—including Ellrich, Freundt, Hill, and others, are admissible as to Gross's (and Lebedev's) guilt under Rule 701. That rule allows for the admission of lay opinion that is (1) rationally based on that witness's perception; and (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue, so long as the opinion is not based on expert knowledge as governed by Rule 702. Indeed, contrary to the defense's view, Rule 704 expressly states that an opinion is not objectionable "just because it embraces an ultimate issue"—in this case, whether Gross manifested corrupt intent, as was apparent to these witnesses. Indeed, *United States* v. *Rea*, 858 F.2d 1206, 1215 (2d Cir. 1992)—the authority cited by Gross, *see* 2/9/17 MIL Ltr. at 2—notes that "there is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental states of others" and that Rules 701 and 704(a) "do not, in principle, bar a lay witness from testifying as to whether a defendant in a criminal prosecution had the requisite knowledge." *Id.* (noting that Rule 701 was adopted because "[w]itnesses often find difficultly in expressing themselves in language which is not that of an opinion or conclusion").[1] Thus, so long as the witness can identify the "objective factual bases from which it is possible to infer with some confidence that a person knows a given fact," including "whether the person was told directly, what he was in a position to see or hear, what statements he himself made to others, conduct in which he engaged, and what his background and experience were," the Court should admit such opinions under Rule 701 and 704. *Id.* at 1216. Accordingly, it is entirely proper to admit the lay opinion of these witnesses about the nature of these payments, including their view that these payments were bribes, illegal, or unethical, so long as those factual bases for the conclusion can be laid.

Finally, Gross's argument is the same one that this Court rejected when Gross objected to the Government's reference of the payments at issue as "bribes," as charged in the S3 Indictment. (1/12/2017 Order, ECF No. 42-43). As the Court recognized in the context of substantive charges of the making of corrupt payments (as against Lebedev) and the corrupt receipt of payments (as against Gross), as set forth in the S3 Indictment, any risk of potential prejudice could be cured by a limiting instruction. (*See id.*). Gross identifies no reason why the Court should deviate from its prior ruling. Indeed, in the context of the S6 Indictment, even less potential prejudice is evident with regard to Gross, since the corrupt intent—as evidenced by the agreement to the bribery scheme, and to cover up that scheme—is direct evidence of the conspiracy. Accordingly, Gross's motion to preclude such testimony is without basis.

---

[1]    The defense's other cited case, *DiBella* v. *Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005), is inapposite as it applies to the exclusion of <u>expert</u> testimony regarding ethical behavior, under Rule 702.

Hon. Alison J. Nathan
February 9, 2017
Page 4

## II.        Evidence Relating to Gross's Financial Condition Is Relevant and Admissible

Gross objects to the admission of "evidence relating to Trevon Gross's lifestyle that have no bearing on payments received from the Hope Cathedral or the Collectables Club." (2/9/17 MIL Ltr. at 2-3.).  The defense only notes two such types of evidence:  first, that the defendant's children are in college and his daughter is in private school, and second, that there are receipts from purchases made "outside the relevant time frame"—*i.e.*, the time during which Gross received the benefits of the payments at issue.  *Id.*  This argument is without merit.

Gross's financial condition—both prior to and after the corrupt payments were made—is direct evidence as to Gross's "motive to act corruptly" in the form of a "hope or expectation of either financial gain or benefit to oneself or some profit or benefit to another." *McElroy*, 901 F.2d at 1021.   To the extent that Gross was having difficulty making ends meet—for instance, because he was paying annual tuition of upwards of $30,000 for each of his three children, but was purportedly only being paid $50,000 per year by HOPE Cathedral—such evidence illustrates why Gross would be susceptible to the bribery scheme in the first instance.  *See*, *e.g.*, *United States* v. *Reed,* 639 F.2d 896, 907 (2d Cir. 1980) (holding that "a defendant's belief that he is in financial difficulty is admissible to show motive"); *United States* v. *Aldi*, 101 F.3d 682, at *3 (2d Cir. April 22, 1996).

Moreover, certain Government exhibits are relevant to Gross's financial condition before and after he received the bribes.  These payments and purchases, even if not paid for directly with bribe proceeds, help establish Gross's financial condition in the period prior to and after the payments in question.  Gross does nothing more than conclusorily assert that he would be unduly prejudiced by evidence of his finances and expenditures, but cannot point to how or what is *unfairly* prejudicial about this evidence.  Nor does Gross specifically identify the particular exhibits or witness testimony to which he objects.  For this reason alone, the motion should be denied.

Hon. Alison J. Nathan
February 9, 2017
Page 5

## **<u>Conclusion</u>**

For all the above reasons, Gross's Second Motion *in Limine* to preclude (1) lay witness testimony regarding the corrupt payments at issue, and (2) evidence concerning Gross's finances and "lifestyle," should be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   _____/s/_____
Eun Young Choi
Daniel S. Noble
Won S. Shin
Assistant United States Attorneys
Southern District of New York
(212) 637-2187/2239/2226

Cc:    Kristen Santillo, Esq.
Henry Klingeman, Esq.
*Attorneys for Trevon Gross*

Eric Creizman, Esq.
Melissa Madrigal, Esq.
*Attorneys for Yuri Lebedev*