

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 22, 2017

**BY ECF**

The Honorable Alison J. Nathan
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: United States v. Yuri Lebedev & Trevon Gross**,
S6 15 Cr. 769 (AJN)

Dear Judge Nathan:

The Government respectfully submits this letter in response to the untimely motion *in limine* emailed by counsel for Trevon Gross earlier this morning. Gross seeks to preclude the Government from introducing evidence, including witness testimony, regarding the fact that HOPE Federal Credit Union ("HOPE FCU") was processing Automated Clearing House ("ACH") transactions relating to "payday" loans on behalf of Kapcharge, pursuant to Rule 403. The motion, which could have been filed by the pretrial deadline set by the Court for motions *in limine*, should be denied.

The Government anticipates that several witnesses will testify that some of Kapcharge's clients for whom HOPE FCU was processing ACH transactions were payday lenders and that Trevon Gross was aware of this fact. A payday loan is generally described as a short-term, extremely high-interest loan that is typically due on the borrower's next payday. Like Bitcoin, although there is nothing inherently illegal about a credit union processing ACH transactions for third-party payment processors whose clients include payday lenders, such financial processing activity poses increased risks for credit unions that must be addressed through proper due diligence and appropriate policies, procedures, and internal controls.

Evidence that Kapcharge's customers included payday lenders is highly probative evidence for several reasons. First, it is vital evidence that explains why Kapcharge was interested in taking over HOPE FCU in order to gain access to the financial system. The Government expects the evidence at trial will show that as a result of law enforcement action (including "Operation Chokepoint" referenced in the articles cited by Gross's counsel) many

financial institutions cut-off third-party payment processing companies, like Kapcharge, who were involved in processing risky financial transactions. As a result, in early 2014 Kapcharge was looking for a bank or credit union to use in order to continue its highly profitable processing for risky businesses, including payday lenders. As such, this is extremely relevant background evidence for the conspiracy charge that explains why Kapcharge was willing to fund the bribe payments made by Anthony Murgio and his co-conspirators to Gross in order to take over HOPE FCU. It would be unfairly prejudicial and confusing for the jury not to permit the Government to introduce this vital evidence.

Second, the Government expects that the evidence at trial will show that HOPE FCU's processing of transactions on behalf of payday lenders inherently involved a high volume of small ACH credits and debits due to the nature of the payday lenders' business model. The evidence will show that this transaction volume and HOPE FCU's failure properly to "know its customers," adopt appropriate ACH policies, or implement adequate BSA/AML controls raised red flags with the NCUA. As the CEO and Chairman of HOPE FCU, Gross had a duty to ensure that the credit union conducted adequate due diligence on Kapcharge and its customers, as well as to ensure that the proper policies and procedures were in place to protect the credit union. It is vital for the NCUA witnesses to be able to explain why they had particular concerns about HOPE FCU processing ACH transactions for payday lenders and how Gross utterly failed to implement proper ACH policies and BSA/AML controls before allowing Kapcharge and to engage in this risky activity. Such evidence goes to the heart of the key elements in dispute: Gross's corrupt intent and intent to be influenced.

Third, the Government expects the evidence at trial will show that Gross did not disclose to his board of directors the fact that HOPE FCU was permitting Kapcharge to process ACH transactions for payday lenders through the credit union. The Government expects the evidence will establish that the board of directors is required, among other things, to approve new members joining the credit union and ensure that proper policies, procedures, and controls are implemented for ACH processing. By withholding the fact that Kapcharge was processing for payday lenders, Gross violated his own fiduciary duties and thwarted other board members' ability to fulfill their fiduciary duties. Moreover, the Government anticipates that former HOPE FCU board members will testify that if they had known that Kapcharge was processing for payday lenders they never would have agreed to permit that activity at the credit union. Indeed, the nature of payday lending, including its high-interest, short-term lending model is in many respects antithetical to the mission of a credit union, particularly a low-income designated credit union like HOPE FCU, whose mission is to provide quality financial products for individuals who are underserved by other financial institutions. Accordingly, this evidence is also highly probative of Gross's corrupt intent and intent to be influenced.

Gross's counsel has failed to articulate any reasons why evidence regarding HOPE FCU's ACH processing for Kapcharge's payday lending is "unfairly prejudicial" under Rule 403 or why the risk of any such prejudice substantially outweighs the highly probative nature of this

evidence. The Government does not anticipate eliciting testimony that the NCUA does not permit credit unions to do business with payday lenders. Indeed, such evidence misses the point. The evidence is relevant because the nature of payday lenders' business model is inherently risky and requires credit unions to ensure that they have conducted the proper due diligence and implement appropriate policies, procedures, and controls for such ACH processing. The fact that Gross did not ensure that HOPE FCU did so before permitting Kapcharge to process millions and millions of dollars in ACH transactions, or disclose the nature of Kapcharge's clientele to the board, is highly probative evidence of his intent. Furthermore, should they choose, defense counsel can cross examine the NCUA witnesses concerning the propriety of credit unions doing business with payday lenders. Counsel's assertion that payday lending has "no precise meaning" is a red-herring. The Government expects witness testimony will establish that "payday" lending is short-hand for short-term, high-interest, low-dollar loans that are typically tied to a borrower's paycheck. Furthermore, based on their own observations and personal knowledge, the witnesses can testify as to the precise nature of the transactions that HOPE FCU was processing for Kapcharge's customers.

For the foregoing reasons, Gross's belated motion *in limine* should be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/
Eun Young Choi
Daniel S. Noble
Won S. Shin
Assistant United States Attorneys
Southern District of New York
(212) 637-2187/2239/2226

Cc: Kristen Santillo, Esq.
Henry Klingeman, Esq.
*Counsel for Trevon Gross*
Eric Creizman, Esq.
Melissa Madrigal, Esq.
*Counsel for Yuri Lebedev*