

60 PARK PLACE, SUITE 1100, NEWARK, NJ 07102 973-424-9777 WWW.KROVATIN.COM
GERALD KROVATIN
HENRY E. KLINGEMAN**
HELEN A. NAU*
ERNESTO CERIMELE*
KRISTEN M. SANTILLO*

ALSO ADMITTED IN HI AND PA**
ALSO ADMITTED IN NY*

March 2, 2017

Honorable Alison J. Nathan
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *United States v. Trevon Gross*, 15-cr-769 (AJN)

Dear Judge Nathan:

      We write in further support of our request for a limiting instruction relating to acts and statements by those affiliated with the Collectables Club that post-dated the falling-out between members of the Collectables Club and Trevon Gross in late November 2014. We also seek to preclude the government from arguing for the use of any such evidence against Trevon Gross in closing.

      In the S6 Indictment, the government has charged Trevon Gross with a specific conspiracy or "bribery scheme" – accepting corrupt payments to facilitate the takeover of Hope FCU so that Anthony Murgio and other members of the Collectables Club could evade scrutiny from financial institutions and others about the nature of Coin.mx and operate an unlawful bitcoin exchange. *See* S6 at 12-15. The government also specifically alleged that, "in furtherance of the scheme to facilitate the takeover of Hope FCU by" members of the Collectables Club, the defendants obstructed an NCUA examination and made false statements. *See Id*. at 15. At trial and in its motion opposing Trevon Gross's limiting instruction, the government has significantly widened this conspiracy, and now alleges that the conspiracy extends to processing ACH transactions for Kapcharge in late 2014 and early 2015 even when members of the Collectables Club were no longer on the board of Hope FCU and had no further involvement with Trevon Gross, Hope FCU or the relationship between

Kapcharge and Hope FCU, and even though the purpose of the business relationship between Hope FCU and Kapcharge had nothing to do with processing bitcoin transactions for Coin.mx.

The government appears to acknowledge that the evidence has shown that after November 24, 2014, Trevon Gross severed ties with the members of the Collectables Club. And indeed, the evidence is consistent with severance of all ties. For instance, at GX 4501, a Whatsapp chat called CU Strategy in which Trevon Gross did not take part, at line 4756, it is clear that Trevon Gross clearly communicated his desire to Jose Freundt and others on November 24, 2014 that he did not want to have any further relationship with the Collectables Club. Nonetheless on that same chat, later that day and in the following days, members of the Collectables Club began to devise new plans to take back control of the Hope FCU by contacting lawyers, recruiting new board members, and ultimately sending a letter to the NCUA in January 2015. Trevon Gross was not a part of these conversations, he had no knowledge of the new plans devised by the members of the Collectables Club, and they were working at cross-purposes to him.

On November 25, 2014, Jose Freundt uses the term "bribery," but that statement is hearsay and it is not in furtherance of any ongoing conspiracy with Trevon Gross. Thus, that and other statements and actions the Collectables Club took to take back control of Hope FCU should not be admissible as to Trevon Gross. For that reason, we continue to request that the following limiting instruction be given:

> You have heard evidence that Michael Murgio, Anthony Murgio, Rico Hill, Jose Freundt, Rico Hill, Yuri Lebedev and others had discussions about making payments to Trevon Gross and took actions to gain control of the board of Hope FCU after Trevon Gross told them on November 24, 2014 that he no longer wanted to associate with them. You should disregard this evidence as against Mr. Gross, as it is not offered against him.

The government argues that Trevon Gross's continued relationship with Kapcharge in late 2014 and 2015 means that he never withdrew from the conspiracy with the Collectables Club, because Kapcharge had made payments as part of the initial agreement between the Collectables Club and Hope FCU in May and June 2014. But Trevon Gross's continued relationship with Kapcharge had nothing to do with taking control of the board of Hope FCU – indeed all legacy board members of the Hope FCU maintained control of the board of Hope FCU after the relationship between Collectables Club and Hope FCU ended, and nobody from Kapcharge ever joined the board. Further, the business relationship between Hope FCU and Kapcharge had nothing to do with bitcoins, it was solely about ACH processing. Thus, even if the government could allege that Trevon Gross and Kapcharge had some other kind of conspiratorial agreement after the Collectables Club relationship ended, it was not the conspiracy charged in the Indictment and it had no relationship to the new plans the Collectables Club members devised to take control of the Hope FCU after Trevon Gross walked away from the relationship. After this fork in the relationships, there were no common goals, the actions of the members of the Collectables Club were not known or reasonably foreseeable to Trevon Gross, and therefore none of the actions or statements of the members of the Collectables Club thereafter should be attributed to Trevon Gross. *See* FRE 801(d)(2)(E) (co-conspiracy statements must be made <u>during and in furtherance of the conspiracy</u>.); *See United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988) ("once a party withdraws from a conspiracy subsequent statements by a coconspirator do not fall within this exemption.")

Respectfully submitted,

/s/ Kristen M. Santillo

KRISTEN M. SANTILLO