H3D9LEBF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4             v.                          15 Cr. 769 (AJN)

5   YURI LEBEDEV and TREVON GROSS,

6             Defendants.                 Jury Trial

7   ------------------------------x

8                                         New York, N.Y.
                                          March  13, 2017
9                                         12:00 P.M.

10
    Before:
11
                      HON. ALISON J. NATHAN,
12
                                          District Judge
13                                        And A Jury

14                          APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    BY:  EUN YOUNG CHOI
17       DANIEL S. NOBLE
         WON S. SHIN
18       Assistant United States Attorneys
         MICHAEL CHANG-FRIEDEN, Paralegal
19       EMILY GRANT, Paralegal

20  CREIZMAN, PLLC
         Attorneys for Defendant Yuri Lebedev
21  BY:  ERIC M. CREIZMAN
         MELISSA MADRIGAL
22       JONATHAN MICHAELSON, Paralegal

23  KROVATIN KLINGEMAN, LLC
         Attorneys for Defendant Trevon Gross
24  BY:  KRISTEN M. SANTILLO
    BY:  HENRY E. KLINGEMAN

25

H3D9LEBF

1          (In open court; jury not present)

2          THE COURT:  I have no note but I want to think through

3     two scheduling issues so that we can take the time we need to

4     propose a solution and then implement it without any

5     unnecessary delay.

6          The first is that a juror approached Ms. Nuñez on the

7     way in this morning and indicated that she had a doctor -- she

8     thinks she has or there may be a doctor's appointment at 4:30

9     this afternoon which she said would require her leaving at

10    3:30.  She did ask Ms. Nuñez, she said she needed to confirm

11    the appointment so she gave Ms. Nuñez a number to call to

12    confirm.  Ms. Nuñez was not able to confirm it without

13    additional information.

14         So I think what we need to do is basically allow this

15    juror to -- I think we need to do some pause of deliberations

16    so this juror can make the call and figure out if she does, in

17    fact, need to leave early or not and then deal from there.

18         The second is, of course, the snow.  And my

19    inclination is to presume that the predictions are correct and

20    that we should not have folks attempt to come in tomorrow out

21    of concern that even if the courthouse is open there will be

22    some jurors affected by other closings, some who will have

23    difficulty getting in, and I worry about trying to have some

24    folks get here only to learn not everybody could.  So I think

25    certainty is probably the best resolution that we can give.

H3D9LEBF

1    And so my inclination is to deal with the two scheduling issues

2    at once.

3         The jury's lunch is going in around 12:30.  My

4    proposal, and I am happy to hear suggestions, would be to bring

5    the jurors into the courtroom in 15, 20 minutes or so, inform

6    them of the likelihood that or the conclusion that they won't

7    sit tomorrow because of the impending snowstorm so if their

8    deliberations are not completed by the end of the day, that

9    we'll resume on Wednesday barring further information.

10        We could put that off until the end of the day if

11   folks prefer.  I'm happy to address whatever timing concerns

12   you might have of that.  But otherwise indicate that a juror

13   has said that they may have an appointment, ask that juror to

14   go with Ms. Nuñez into the robing room to make the call and ask

15   the other jurors to wait until she returns, let that juror get

16   as much information as she needs and then I think my

17   instruction would be based on that information once again the

18   jurors should just send a note as to the timing that they

19   request to leave for the day.

20        MS. CHOI:  I don't know if your Honor was

21   contemplating a situation in which even if that particular

22   juror has a 3:30 appointment if the appointment is not going to

23   be particularly long for them to come back and continue

24   deliberations.  I only say that given that we don't have any

25   notion as to how far they may be.  I think there may be an

1    inclination that they would want to stay later than 5 p.m. if

2    given the opportunity.  And they may not -- since I think your

3    Honor has never said that expressly to them given that on

4    Friday there was that other conflict issue although obviously

5    the court and the parties have considered that as a possibility

6    it may sort of be a situation in which you may want to give

7    them the option of placing them on hold, everyone sort of

8    leaving the deliberation room until she returns and then their

9    continuing to --

10           THE COURT:  So one piece -- the appointment is in the

11   Bronx.

12           MS. CHOI:  Okay.

13           THE COURT:  She thinks it's for 4:30 which is what

14   caused her to say she would need to leave at 3:30, given that

15   travel time.

16           MS. CHOI:  I didn't -- if it's the Bronx I think that

17   changes things.  If it was somewhere nearby obviously it may

18   have made sense.

19           THE COURT:  So, let's take them one at a time.  With

20   respect to the appointment issue, my suggestion is we bring

21   them in to the jury box a little bit before their lunch is

22   brought in, indicate that a juror might have an appointment

23   issue; say that Ms. Nuñez will take her to a phone so she can

24   call and figure out what she needs to figure out, tell the

25   other jurors to pause their deliberations until she returns,

H3D9LEBF

1    and then with the information that she has upon return the

2    juror should indicate when they want to stop deliberating for

3    the day.

4            MS. CHOI:  Yes.  When they want to stop deliberating

5    for the day.  I think if we're doing it all at once if the

6    Court would let -- at least give them the option of saying

7    beyond five assuming that that particular conflict can be

8    resolved or is resolved one way or the other because I think

9    under normal circumstances they may want to elect to have that

10   option.

11           THE COURT:  I think I did suggest that possibility

12   last week but I'll say again based on that information and

13   everyone's schedule they can simply let us know if they need to

14   leave early to accommodate this appointment, if they need to

15   leave at five, or if they desire to continue deliberating they

16   may do so and to let us know.

17           So taking that issue first, sounds like the government

18   is in agreement.

19           Mr. Creizman?

20           MR. CREIZMAN:  I'm in agreement with the Court's

21   suggestion.

22           THE COURT:  Mr. Klingeman.

23           MR. KLINGEMAN:  I agree.

24           THE COURT:  And everybody is comfortable with the

25   phrasing?  All right.  And then snow.

H3D9LEBF

1          I think the two decisions are should we just go ahead

2     and presume no court tomorrow; and if so, when should we tell

3     them?

4          MS. CHOI:  Your Honor, I think we should wait until

5     the end of the day on that question for a few reasons.  I think

6     everyone would agree that you wouldn't want to put undue

7     pressure on the jury to try to rush things because they don't

8     want to come back on Wednesday as opposed to Tuesday.

9          In addition, as a general matter, sometimes they get

10    it wrong and it's my understanding that at least as of now

11    Judge McMahon hasn't closed the courthouse officially.

12         THE COURT:  It's true.  I don't think we'll know by

13    the end of the day today whether the courthouse will be closed.

14         MS. CHOI:  I see.  Okay.

15         I still think there is no reason to rush things.  It

16    only becomes an issue if the jury still would like to

17    deliberate beyond the hours allocated to them today be it

18    because of the conflict from the medical issue or otherwise.

19    So I don't think that there's any reason to inform them of the

20    possibility that the courthouse may be closed if it doesn't end

21    up -- if they don't need to necessarily -- we don't have to

22    reach that path yet, if that makes sense.

23         THE COURT:  Well I'm not sure it's directly responsive

24    to the suggestion.

25         The first question is when do I make a decision as to

H3D9LEBF

1    whether they will deliberate tomorrow or not if they're still

2    going; the second question is when to inform them of that.

3              MS. CHOI:  I think if the end time is 3:30 and they're

4    going to stick by the 3:30, then I think there is no reason not

5    to tell them that there is a possibility that the court may be

6    closed if for no other reason we need to deal with the

7    logistical situation of -- and I don't know how your Honor

8    wants to take this but I presume that there would be some way

9    in order for the court to inform the jurors of this fact or you

10   know some sort of --

11             THE COURT:  I'm not making myself clear.

12             My concern would simply tying sitting tomorrow with

13   whether or not the courthouse is open.  Strikes me as

14   problematic for a couple of reasons.  Now you can tell me I'm

15   wrong, but it's problematic because the courthouse will

16   probably be open even if schools are not open, even if people

17   would face transportation issues.

18             What I don't want to do is have ten jurors trudge in

19   here through the snow and dealing with all kinds of issues only

20   to learn by ten o'clock tomorrow that two can't make it.

21             So my suggestion would be to just decide based on what

22   we know of the weather predictions now that I won't ask them to

23   deliberate tomorrow.

24             MS. CHOI:  If your Honor is inclined to have them not

25   deliberate in anticipation of tomorrow irregardless --

H3D9LEBF

1    regardless of what happens with regard to official court

2    closure, the government's position is that your Honor should

3    still I think wait until the end of the day to inform them of

4    that fact.

5              THE COURT:  Understood.

6              Mr. Creizman.

7              MR. CREIZMAN:  Your Honor, I would request that the

8    jurors be brought out before lunch and the reason is, is

9    because several of the jurors, I believe, are from Westchester

10   County and one of them I believe is from Putnam County, and

11   there is no way that this storm is not on their minds.  I think

12   the way to relieve the pressure on the jury is actually to let

13   them know that, hey, there is a juror that may have to leave

14   for a doctor's appointment at 3:30 because one of the issues is

15   getting home tonight and making sure that -- worrying about

16   whether they are going to be stuck in the city or something

17   like that; and number two, thinking that, hey, are we going to

18   have to come back tomorrow or not.  That's another -- so in

19   order to relieve the pressure from the jury, letting them know

20   rather than keeping them in the dark until the end of the day,

21   whatever, which they don't know what the end of the day is at

22   this point, I think bringing them in in 30 minutes, 20 minutes,

23   whatever it is before their lunch would make sense.

24             THE COURT:  I'm going to bring them in any way to deal

25   with the one juror.  And your suggestion is simply to tell

H3D9LEBF

them, if we come to -- if everyone agrees with the conclusion

that we should just prophylactically cancel for tomorrow, your

preference is to let them know that sooner rather than later.

MR. CREIZMAN:  Absolutely.

THE COURT:  Mr. Klingeman.

MR. KLINGEMAN:  I would agree with what's been said.

This is the way I would see it working out.  If the juror with

the doctor appointment has to keep that appointment and thus

deliberations have to end at 3:30, then I would agree with

informing the jury now that they're not going to be coming back

tomorrow so that they can begin to relax about the storm and

focus on the next several hours of their deliberations knowing

they will be resuming them, in all likelihood or at least in

all probability, Wednesday.

If the juror turns out doesn't need to go to the

doctor appointment, then I would suggest telling the jury that

they are going to be -- they're not going to be sitting

tomorrow, not going to be deliberating tomorrow, but advising

them what your Honor has already told them, reminding them what

your Honor has already told them which is they can stay late

today if they want.

THE COURT:  So in both instances -- whatever is the

necessity around the one juror's appointment, you agree with

Mr. Creizman that we should tell them, I should tell them at

the lunch break that we won't sit tomorrow because of the

H3D9LEBF

impending snowstorm and so if they're not completed with their

deliberations by the end of the day today they'll return

Wednesday morning.

　　　　MR. KLINGEMAN:  I do agree.  What I don't want is this

external concern weighing on their minds over the next few

hours.

　　　　THE COURT:  Ms. Choi.

　　　　MS. CHOI:  That's fine.  I thought -- as long as

defense counsel has come to agreement with it, the government

is fine with whatever approach is taken with regard to that.  I

mean it just seems as though -- I can see it going both ways.

But defense counsel seems to be unanimous in the way in which

they'd like to approach the issue and the government has no

objection to that.

　　　　THE COURT:  No.  It's impossible to predict what exact

impact it has either not knowing or knowing so we can err on

the side of truth.

　　　　MS. CHOI:  Fair enough.  I think either way they are

thinking about it.  You might as well just relieve them of

their -- at least their lack of knowing what the future lies.

　　　　MR. KLINGEMAN:  From my perspective the implication of

telling them about tomorrow is that they can take as much or as

little time as they need to continue their deliberations.  It's

a neutral impact disclosure.

　　　　THE COURT:  All right.

H3D9LEBF

1          I recognize I came in with this assumption but let me

2     just make sure everybody agrees with my judgment and tell me if

3     you think we should approach it differently, but the judgment

4     to sort of trust that the weather predictions are close to

5     right and just go ahead and presume and cancel for tomorrow.

6          MR. CREIZMAN:  Yes, your Honor.  I agree with that.

7          MR. KLINGEMAN:  I haven't looked at the forecast but

8     it looked pretty grim at about nine o'clock this morning.

9          THE COURT:  It looks grim.  Who knows, but it looks

10    grim, though it doesn't look like it will start until late

11    tonight so I don't think returning home will be an issue.  It

12    could -- it also looks like it will be an all-day storm

13    potentially which means that Wednesday could itself -- could

14    itself pose an issue but at least with respect to that I feel

15    like we can see where we are and come to a decision at an

16    appropriate point and inform them as necessary.

17         MS. CHOI:  Right.  I think that's right, your Honor.

18    I think with regard to Wednesday, you know, before they break

19    for the day, whatever time that might be, that your Honor

20    inform them of some sort of way in which they could contact the

21    court about Wednesday.

22         THE COURT:  We have -- Ms. Nuñez can contact all of

23    them and I think rather than sending them into the court system

24    for, again, whether the courthouse is closed, I think --

25         MS. CHOI:  Right.  To make clear that it's what your

H3D9LEBF

1    Honor says as opposed to if they go to the website or anything

2    else, I think that that -- I think that makes a lot of sense.

3              THE COURT:  Okay.

4              So just to repeat the plan that we're in agreement.

5    So I want to time it around when their lunch is coming since

6    that's a breaking point anyway.  So I'll step off, but in about

7    ten minutes I'll come back on, bring them out, indicate that

8    I've been informed of the issue with respect to the one juror

9    but Ms. Nuñez has not been able to resolve it.  Ask her -- ask

10   the jury when they return to the jury deliberation room to

11   pause their deliberations until that juror returns.  Ms. Nuñez

12   will take that juror to a telephone so she can find out

13   whatever she can, whatever information she needs about when she

14   needs to leave tonight; and then third, what I'll say to the

15   jurors is based on that information that she takes back to the

16   jurors, it will be up to them as to when --

17             MS. CHOI:  The end for the day.

18             THE COURT:  The end of the day is.  If she needs to

19   leave earlier they -- if she needs to leave -- if they need to

20   stop because she needs to leave early, they should indicate

21   that.  If they need to stop at 5 and aren't yet through with

22   their work they should indicate that.  Should they agree to

23   continue deliberating later than five that, too, is fine.  They

24   should just let the Court know by note.

25             And then number two, I'm telling them now because of

1    the impending snowstorm predicted for tomorrow that the Court

2    will not ask them to come in for deliberations tomorrow so that

3    if their work is not complete by the end of the day today,

4    whatever time they determine that to be, they will not be

5    required to come in tomorrow and deliberations will resume

6    Wednesday morning at 9:30.  Okay.

7             MR. CREIZMAN:  Yes, your Honor.

8             THE COURT:  I'll step down just for a few minutes to

9    get us closer to 12:30 and we'll come back.

10            (Recess)

11            THE COURT:  The jury's lunch is on the way.  So we'll

12   bring them in now, proceed as planned.  As a quick note, they

13   just closed New York City schools for tomorrow.

14            (Jury present; time noted 12:36 p.m.)

15            THE COURT:  Good afternoon everyone.  Please take your

16   seats as you come in.  Good afternoon everyone.  Everyone may

17   be seated.

18            Your lunch has arrived.  So that's going in.  So we

19   thought -- I thought I'd take the opportunity to deal with two

20   scheduling matters.

21            The first.  On the way in this morning one of you

22   indicated to Ms. Nuñez that there might be a potential doctor's

23   appointment scheduling issue.  She was not able to confirm one

24   way or the other so what we'll do is I'll ask that juror to go

25   with Ms. Nuñez after you come out of the jury room here now and

1    Ms. Nuñez will take you to a phone and you can make whatever

2    calls you need to make to find out that information.

3          You'll take that information into -- back with you to

4    the jury room.  Other jurors I'll ask, of course, that you

5    pause your deliberations until all twelve of you are there.

6    With that information, the decision as to when we will end

7    today will be up to you, the jurors.  If to accommodate that

8    appointment is a necessity you'll let me know by note that you

9    need to leave at whatever time that juror needs to leave.

10   We'll end deliberations for the day.  If that doesn't need to

11   be accommodated and you need to leave at five, if your work is

12   not yet done, you'll let me know by note that that's the case.

13   If your work is not done and you'd like to proceed beyond five,

14   you'll let me know by note if that's the case.  So that juror

15   will have whatever information she needs and then you as a

16   group will let me know what you want.

17         Second, of course there's a snowstorm coming.  I've

18   just learned that New York City public schools are closed

19   tomorrow so I'm going -- I have made the decision if your work

20   is not yet complete you will not sit and deliberate tomorrow.

21         So, that means if the process is ongoing the plan will

22   be to -- and it's not completed by the end of the day today,

23   whatever time you let me know you want that to be, you would

24   plan on resuming Wednesday at 9:30 with me contacting you

25   through Ms. Nuñez if the weather is impacting anything for

H3D9LEBF

1    Wednesday.

2              So, that is the plan.  I will ask, just as you go back

3    in, the one juror who needs to make the call with Ms. Nuñez, if

4    you would just pause in the hallway and, again, other jurors

5    help yourself to lunch but, please, of course wait until all

6    twelve of you are there for deliberations.

7              Thank you so much.  Enjoy your lunch.

8              (Jury excused)

9              THE COURT:  Anything to address?  Counsel?

10             MS. CHOI:  Not from the government, your Honor.

11             MR. KLINGEMAN:  No, your Honor.

12             THE COURT:  Mr. Creizman anything?

13             MR. CREIZMAN:  No, your Honor.

14             THE COURT:  All right.  We'll wait until we hear

15   further.  Thank you so much.

16             (Recess pending verdict)

17             (At 1:52 p.m. a note was received from the jury)

18             (Jury not present)

19             THE COURT:  I did receive a note which reads:

20             "Your Honor, we would like to request the following

21   transcript, cross-examination of Trevon Gross on March 7, 2017.

22             "We would also like to request clarification on the

23   definition of reasonably foreseeable as it relates to venue.

24             "Kind regards. "

25             Signed Juror no. 2.

H3D9LEBF

1          "P.S.  We request to be dismissed at 3:15 p.m. so

2     juror no. 9 may attend her doctor's appointment."

3          We'll mark this as Court Exhibit 4.

4          Here is what I propose.  Hopefully our advanced work

5     of preparing the transcript helped us out.  If the government

6     can show -- I'll step down.  If the government can show to the

7     defense what you propose go back for that and get agreement in

8     printed version so that it can go back quickly, and I also

9     suggest that you start thinking about what you would propose

10    to -- if anything, to expand, illuminate reasonable

11    foreseeability with respect to venue.  I'll do the same.  I'll

12    return.

13          MR. KLINGEMAN:  I just had a question as to the exact

14    phraseology.  Was it reasonably foreseeable or reasonable

15    foreseeability?

16          THE COURT:  The definition of "reasonably foreseeable"

17    as it relates to venue.

18          I'll look at the latter as well as I step off and

19    rejoin you in a few minutes.  Thank you.

20          (Recess)

21          THE COURT:  We have the transcript ready?

22          MR. KLINGEMAN:  Your Honor, I just have one request.

23    I'd ask what the entire testimony from start to finish be given

24    to the jury since that's the way it was presented to the jury.

25          MS. CHOI:  Obviously we disagree, your Honor.  The

H3D9LEBF

1    note was specific about what the jurors wanted which is the

2    cross of the defendant and the government would ask that only

3    the cross be sent back.

4            THE COURT:  I will give them what they've asked for.

5    They were made aware that they could ask for what they like and

6    it could be that the next note asks for more but right now

7    we'll respond to this note.

8            Do you have agreement on what constitutes the cross?

9            MS. CHOI:  Your Honor, we've given defense counsel the

10   transcript electronically.  They're reviewing it.  We're

11   waiting for confirmation as to the page numbers and agreement

12   on the page numbers.

13           MR. CREIZMAN:  I think we --

14           THE COURT:  Can't hear you.

15           MR. CREIZMAN:  From Mr. Lebedev's side we've reached

16   agreement on the page numbers and what constitutes the cross

17   which includes Lebedev's cross.

18           THE COURT:  So any redaction issues are resolved as

19   far as you're concerned?

20           MR. CREIZMAN:  We've reviewed the redaction issues

21   from our perspective.

22           THE COURT:  Mr. Klingeman.

23           MR. KLINGEMAN:  No objection.

24           THE COURT:  You're in agreement as to the material.

25           So what I propose is while we discuss how to handle

H3D9LEBF

1    the second request that we send that back in the meantime.

2         MS. CHOI:  Mr. Chang-Frieden is enacting the

3    redactions now and can e-mail it to Ms. Nuñez for purposes of

4    printing it.  We don't have a hard copy yet but hopefully that

5    will be done forthwith.

6         With regard to the venue issue I would defer to

7    Mr. Shin since he's the person who has written about this

8    particular issue in particular.

9         THE COURT:  Go ahead, Mr. Shin.

10        MR. SHIN:  Judge, you may recall that prior to the

11   charge conference we had submitted a letter regarding a series

12   of edits and supplements to the venue instruction.  And we had

13   reached agreement that we would actually eliminate those issues

14   and just give a very bare-bones venue charge.  But in light of

15   the additional questions raised -- an additional question

16   raised by the jury in a note today, the government's position

17   is that it would be appropriate to provide the additional

18   detail that had been set forth in the letter.

19        So just to remind the Court, the initial instruction

20   as proposed by the parties had included some detail about --

21   there was an example of e-mail communications.

22        THE COURT:  Right.

23        MR. SHIN:  And there were scenarios, depending on

24   whether the defendant or the coconspirator was in the district

25   and receiving an e-mail or sending an e-mail versus outside of

1  the district and sending or receiving something to someone else

2  who is in the district.  And so that scenario was laid out.

3  And we had also proposed a supplement regarding venue being

4  established by financial transactions including wire transfers

5  from, through, or to the district.  Including some additional

6  instruction consistent with Second Circuit cases we had cited

7  which provide that it's appropriate to consider the defendant's

8  business savvy as well as particular documents the defendant

9  may have seen reflecting a wire transfer touching on the

10  district.  And so in light of the jury's note in this case we

11  would propose that those additional instructions be given to

12  the jury consistent with what was set forth in our March 2

13  letter.

14         THE COURT:  Okay.  I'm looking at the March 2 letter.

15         The government's current proposal is to provide what's

16  included here with the track changes language incorporated.

17         MR. SHIN:  Yes, your Honor.  Just to remind the Court

18  the track changes we're addressing a couple of different

19  issues.  One was just to make sure we were consistently using

20  reasonable foreseeability in the different e-mail scenarios so

21  that there would be no confusion about reasonable

22  foreseeability applies to whatever e-mail scenario the jury

23  might consider.  Another set of edits was just to make clear

24  that reliance on e-mail or communication could be based on just

25  a single such e-mail or communication consistent with -- by

H3D9LEBF

1    analogy to the Parrilla example based on one call.

2            Finally, the third proposed change was the new

3    paragraph we had proposed regarding wire transfers and what

4    could be considered in determining whether a wire transfer is

5    reasonably foreseeable.

6            Of course, earlier in the letter we've cited the

7    various case law which supports the various propositions which

8    we've proposed.

9            THE COURT:  Let me just read into the record what the

10   government's -- why don't you Mr. Shin read into the record

11   what the government's proposed charge would be and then I'll

12   hear from defense counsel.

13           MR. SHIN:  Sure.  So, just to set the context, your

14   Honor, the current charge includes a paragraph -- it's the

15   third paragraph of the current venue charge -- addressing

16   conspiracy.  It's the current charge, in the third paragraph

17   says as to the conspiracy charges:  The government need not

18   prove that any crime was completed in this district or that the

19   defendants or any of their coconspirators were physically

20   present here.  Rather, venue is proper in this district if any

21   of the defendants or their coconspirators caused any act or

22   event to occur in this district in furtherance of the offense

23   and it was reasonably foreseeable to the defendant that you are

24   specifically considering that the act would take place in the

25   Southern District of New York.

1          So that's where the current paragraph ends, your

2     Honor.  The government would propose, first, that the following

3     language that I'll read be added.  So, first, among other

4     things, venue can be established if any of the defendants or

5     their coconspirators caused any communication or wire to be

6     transmitted to, from, or through this district if the specific

7     communication in question was in furtherance of the conduct

8     constituting the offense.  Such a communication can include the

9     transmission of an e-mail to or from this district in

10    furtherance of any of the offenses when any of the defendants

11    or coconspirators was in the district at the time he or she

12    sent or received the e-mail if that was known or reasonably

13    foreseeable to the defendant you are specifically considering;

14    or when any of the defendants or coconspirators was sending the

15    e-mail to someone in the district if that was known or

16    reasonably foreseeable to the defendant you are specifically

17    considering.

18         And then we had also proposed an additional paragraph

19    regarding financial transactions and the language we are

20    proposing would read as follow.  Venue can also be established

21    if any of the defendants or their coconspirators caused any

22    financial transaction to be transmitted to, from, or through

23    this district if the specific transaction in question was in

24    furtherance of the conduct constituting the offense.  Such a

25    financial transaction can include the transmission of a wire

H3D9LEBF

1  transfer to, from, or through this district in furtherance of

2  any of the offenses if the defendant you are specifically

3  considering knew or could reasonably foresee that the wire

4  transfer would be transmitted, to, from, or through this

5  district.  In determining whether the defendant you are

6  specifically considering knew or could reasonably foresee that

7  the financial transaction would be transmitted to, from or

8  through this district, you may consider that defendant's

9  business savvy and whether he saw any documentation indicating

10  that the transaction would be transmitted to, from, or through

11  this district.

12         THE COURT:  Go ahead, Mr. Klingeman.

13         MR. KLINGEMAN:  Your Honor, we object to the

14  government's proposed language.  I would note that the last

15  sentence in particular is drawn directly from the government's

16  argument in summation and the jury is welcome to consider it

17  but it should not be given the imprimatur of the court and

18  delivered as a jury instruction.

19         As I understood the note the jury was looking

20  specifically for a definition of reasonably foreseeable and I

21  would ask the Court to give a concise definition of reasonably

22  foreseeable.

23         THE COURT:  What do you propose?

24         MR. KLINGEMAN:  "An occurrence is reasonably

25  foreseeable if it -- excuse me -- if it is the consequence an

H3D9LEBF

1    ordinary person of average intelligence would expect to result

2    from his actions."

3         THE COURT:  What is that drawn from?

4         MR. KLINGEMAN:  I don't have specific authority for

5    it.  It's a definition of reasonable foreseeability that we

6    draw from tort law and that I did to the best of my

7    recollection based on my limited ability to respond to the note

8    in the last few minutes.

9         THE COURT:  I think the problem with that is the last

10   line of what the government read is the law and I think what

11   you just read would suggest that they could not take into

12   account, for example, things like business savvy and

13   sophistication located specifically in an ordinary person's

14   intelligence and the like.

15        I'm not signing on to the government's version either.

16   I think -- I do want to be directly responsive to the jury's

17   request.  And I think you're right, Mr. Klingeman, I think what

18   they're looking for is some meat on the bones of reasonable

19   foreseeability and I think we need to do that in a way that's

20   fully consistent with the circuit law on what counts as

21   reasonable foreseeability in the context of venue.

22        MR. KLINGEMAN:  Well perhaps instead of your Honor

23   using the term an ordinary person of average intelligence we

24   could substitute a person similarly situated to the defendant.

25        I assume that if there is direct knowledge of the

1    defendant's -- excuse me -- direct evidence of the defendant's

2    knowledge, then the question of reasonable foreseeability is

3    moot.

4           THE COURT:  I think that's right.  The fact is -- so

5    actual knowledge takes care of reasonable foreseeability.

6           MR. KLINGEMAN:  Yes.

7           THE COURT:  But actual knowledge is not required,

8    something less than actual knowledge is required to be shown.

9    So I mean I was looking at the Rommy decision and there is a

10   passage there which is citing Rowe, 414 F.3d 271, and citing

11   Svoboda, 347 F.3d at 483, which talks in language of -- quoting

12   Rowe says, "must have known or contemplated that the

13   advertisement would be transmitted..."

14          I mean I wonder if there's a version -- something like

15   reasonable foreseeability means either actual knowledge or

16   the -- so either the defendant actually knew or was likely to

17   have known or something along those lines.  Actual knowledge or

18   likely knew or contemplated that acts in furtherance of the

19   conspiracy would occur in the Southern District of New York.

20          So maybe the way to do it, putting that together is

21   something like venue can be established either by showing that

22   the defendant had actual knowledge of acts in furtherance of

23   the conspiracy occurring in the Southern District of New York

24   or that the defendant likely knew or contemplated that acts in

25   furtherance of the conspiracy would occur in the Southern

H3D9LEBF

```
 1    District of New York.

 2              Mr. Klingeman.

 3              MR. KLINGEMAN:  That sounds much closer to what --

 4              THE COURT:  What you're thinking?

 5              MR. KLINGEMAN:  What I was thinking, while taking into

 6    account your Honor's description of the law.

 7              THE COURT:  Mr. Creizman.

 8              MR. CREIZMAN:  I do not take a position on this

 9    particular issue.

10              THE COURT:  Mr. Shin.

11              MR. SHIN:  A couple of points, your Honor.  While I

12    don't object to that structure, a couple points.

13              One is consistent with the charge as currently given

14    to the jury I think that language should refer to any act in

15    the singular rather than in the plural.

16              Second --

17              THE COURT:  Just a second.

18              Go ahead.

19              MR. SHIN:  I apologize, your Honor.  Could I ask your

20    Honor to read one more time the likely new formulation?

21              THE COURT:  Venue can be established either by showing

22    that the defendant had actual knowledge of an act in

23    furtherance of the conspiracy occurring in the Southern

24    District of New York or that the defendant likely knew or

25    contemplated that an act in furtherance of the conspiracy would
```

H3D9LEBF

1    occur in the Southern District of New York.  That version that

2    I just read incorporated your request to make it singular, act.

3              MR. SHIN:  Thank you, your Honor.

4              The one thing about the "likely knew," your Honor, is

5    I pulled up Rommy as your Honor was speaking.  I think -- I'm

6    concerned that the likely knew -- I don't think I have seen

7    likeliness associated with reasonable foreseeability.  And I'm

8    concerned that they then will impose a higher burden than is

9    actually warranted especially because what I have seen is

10   reference to could reasonably have foreseen.  It's often

11   written in terms of could rather than --

12             THE COURT:  I fully agree with that and I'm open to a

13   suggestion on that adverb, I think.  But what I don't want to

14   do is simply -- if we can avoid it, simply repeat the phrase

15   "reasonable foreseeability."

16             Now, sometimes we can't avoid it and we send the jury

17   back with the language we have.  But if there's a suggestion

18   for that standard, that could have known standard or should

19   have known standard, reasonably could have known, perhaps.

20             MR. SHIN:  Your Honor, I think reasonably could have

21   known is -- comes closest I think to reasonably foreseeable of

22   the formulations that the Court as offered.

23             I would request, though, that if we are going to

24   provide this explanation that it include -- I've lost the

25   precise framing but somewhere in there if it could say someone

1    with the defendant's experience or someone in the defendant's

2    position; adding something like that, someone with the

3    defendant's experience could have known and so on, just, again,

4    to clarify to the jury that it's the defendant's particular

5    circumstances rather than some generic ordinary person kind of

6    standard that controls in this case which I believe is fully

7    consistent with the Second Circuit case law.

8            THE COURT:  So let me adopt then the suggestion would

9    be venue can be established either by showing that the

10   defendant had actual knowledge of an act in furtherance of the

11   conspiracy occurring in the Southern District of New York or

12   that the defendant reasonably could have known or contemplated

13   that an act in furtherance of the conspiracy would occur in the

14   Southern District of New York.  It's not phrased in the

15   objective.  It's phrased with respect to the defendant.

16           MR. SHIN:  Right, your Honor.  I think what would

17   reflect our request is that the defendant reasonably could have

18   known or contemplated in light of his experience and position

19   or something -- I'm not wedded to any particular phrasing of

20   that concept, of the "in light of."

21           THE COURT:  Nor I.  So let's start with a proposal.

22           MR. SHIN:  Or that the defendant reasonably could have

23   known or contemplated in light of his experience and

24   background, or let's go with that as the proposal, "in light of

25   his experience and background."  And then I think it would pick

H3D9LEBF

1    up where the language that currently exists, your Honor.

2            THE COURT:  In light of his experience or background

3    that an act in furtherance of the conspiracy would occur in the

4    Southern District of New York.  I think that's fair.

5            Go ahead, Mr. Klingeman.  Do you want to hear it

6    through one more time?

7            MR. KLINGEMAN:  If we could just get it one more time

8    and then if I could have a moment.

9            THE COURT:  Yes.  Absolutely.

10           Venue can be established either by showing that the

11   defendant had actual knowledge of an act in furtherance of the

12   conspiracy occurring in the Southern District of New York or

13   that the defendant reasonably could have known or contemplated,

14   in light of his experience and background, that an act in

15   furtherance of the conspiracy would occur in the Southern

16   District of New York.

17           MR. NOBLE:  Judge.

18           THE COURT:  One lawyer rule.

19           MR. NOBLE:  Yes, Judge.

20           THE COURT:  Go ahead, Mr. Klingeman.

21           MR. KLINGEMAN:  Your Honor, we would agree with the

22   instruction as you've just described it based on its original

23   form without the government's additional formulation.  Here's

24   my rationale.  I'm not convinced that the case law imposes a

25   higher duty of knowledge or foreseeability on Mr. Gross with

H3D9LEBF

respect to this particular set of circumstances.  In other

words, I read the cases in the securities area as imposing a

duty that's common throughout the industry on people who work

throughout the industry, if that makes any sense; whereas,

Mr. Gross is being attributed with certain financial knowledge

by the government with respect to the way wire transfers work

that I don't think is fair or e-mail which is actually not an

area of specific expertise.  You just have to know where the

sender or receiver may be at a particular time.

         So I like what your Honor originally suggested which

was "or that the defendant reasonably could have known or

contemplated that an act in furtherance of the conspiracy would

occur in the Southern District of New York," because that talks

about the defendant and Mr. Gross in particular and the

knowledge that he had that may have been developed, for

example, during the cross-examination that the jury could then

reflect upon in terms of the definition that your Honor is

providing the jury.

         So we'd like the original definition without the

government's additional language of "in light of his experience

and background."

         THE COURT:  I think -- my immediate reaction to what

you said is I don't understand this proposed language as

imposing a higher burden.  I do want to make clear to the jury

that it's not an objective standard; that they can take into

H3D9LEBF

1    account all pertinent facts, all facts they deem relevant,

2    including --

3           MR. KLINGEMAN:  Then I think exactly what your Honor

4    just said may be something we could work with.  Instead of

5    saying, "In light of his experience and background," say

6    something to the effect of, "In light of the facts as you

7    determine them to be."

8           THE COURT:  How about --

9           MR. SHIN:  If I could address a couple of points that

10   Mr. Klingeman raised.

11          THE COURT:  Go ahead.  First, I think just saying "in

12   light of the facts as you determine them to be" doesn't give

13   the jury any guidance as to what factors are relevant to

14   whether something is reasonably foreseeable; and to

15   Mr. Klingeman's earlier point that the cases that we've cited

16   only apply if it's something that's generally applicable to the

17   industry, that's not what the circuit said.  The circuit in

18   those cases was specifically talking about the facts of the

19   particular defendant they were discussing.  So they said in one

20   case the defendant was a sophisticated lawyer and tax

21   accountant.  It was not setting some kind of general rule that

22   you only get this particular test if it's -- if you're a tax

23   accountant and lawyer.  It was talking about the specific

24   circumstances of that defendant.  That was the Ohle case.

25          And then Svoboda they specifically made reference to

H3D9LEBF

1    the fact that the defendant was a savvy investor.  And so all

2    we're asking for, your Honor, is that the jury be instructed

3    consistently with those cases that they be permitted to

4    consider the defendant's background and experience.  We're not

5    taking the more aggressive position which we think would be

6    justified in this case to say including whether the defendant

7    was a savvy business person or including whether the defendant

8    was a chairman and CEO of a federal credit union.  And so we've

9    proposed language that keeps it in general terms but accurately

10   instructs the jury that they can consider the defendant's

11   particular circumstances.

12            MR. KLINGEMAN:  The difficulty with that is it does

13   impose on the defendant, this particular defendant, a higher

14   capability, intellectual capability.

15            THE COURT:  I don't see that.

16            MR. KLINGEMAN:  Let me explain.  The venue facts turn

17   on a number of different pieces of evidence in the case, not

18   just the wire issues.

19            THE COURT:  Right.

20            MR. KLINGEMAN:  But e-mail, for example.  And in terms

21   of whether you know where an e-mail is going or where it's been

22   sent from doesn't require any specific --

23            THE COURT:  I thought the e-mail evidence turned on

24   where Mr. Gross was when he sent the e-mail.

25            MS. CHOI:  Or received it.

H3D9LEBF

1          MR. SHIN:  It could turn on if he was present in the

2     district when he sent or received it.  It could also turn on

3     even if he was outside the district it was reasonably

4     foreseeable to him that the person he was corresponding with

5     was in the district.

6          MR. KLINGEMAN:  I would submit that doesn't turn on

7     his experience and background anymore than it does for anybody

8     who sends and receives e-mail.  It's only when you get into the

9     wires that you get into the dispute that the parties have that

10    Mr. -- in the case of wire transfer records that are resident

11    at a bank branch, whether Mr. Gross either could have or should

12    have taken it upon himself to go visit that branch and look at

13    it, or in the case of the wires that came in related to other

14    transactions in the case, whether he would note on the

15    attachments to various e-mails that it was a New York bank

16    mentioned.

17         So, again, I go back to the original language that the

18    Court suggested and I would ask that be given.

19         Remember, your Honor, they're just looking for

20    reasonably foreseeable, not a full definition of venue.

21         THE COURT:  Well, no.  They're not looking -- right

22    they're not looking for a full definition of venue, but I want

23    to make sure I'm giving a definition of reasonable

24    foreseeability.  Because it's a distinction between knowledge

25    and actual knowledge, I don't want to dissuade them from an

1   understanding that venue can be established by actual

2   knowledge.

3          MR. KLINGEMAN:  Wouldn't that be clear from the

4   original instruction, your Honor, I would submit.

5          MR. SHIN:  But these specifically asked.

6          THE COURT:  No.  They've asked the question.  So I'm

7   not going to infuse confusion into an answer.

8          How about a version that is accurate but sends it back

9   to the jury for the assessment.  So something like maybe just

10  grammatically we can take the clause set off by commas out and

11  end the sentence and say something like:  In assessing a

12  defendant's knowledge or reasonably foreseeable knowledge you

13  may consider -- you may take into account his experience and

14  background to the degree you determine it relevant to the

15  assessment.  That's a bit circular but it sends it back to them

16  in some way.

17         MS. CHOI:  Sorry, your Honor, could you just repeat

18  that.

19         THE COURT:  It didn't come out as nicely as I wanted.

20         So, we'd end the sentence that we talked about but

21  take out what I had previously said about based on what -- go

22  back to what I had said.

23         So I'll just read it.  It would be:  Venue can be

24  established either by showing that the defendant had actual

25  knowledge of an act in furtherance of the conspiracy occurring

H3D9LEBF

in the Southern District of New York or that the defendant

reasonably could have known or contemplated that an act in

furtherance of the conspiracy would occur in the Southern

District of New York.  In assessing what the defendant knew or

could have -- or could have known or contemplated you may

consider any -- you may consider any relevant -- you may

consider any experience or background of the defendant that you

deem relevant or that you determine relevant.

So I'll read it again.  "Venue can be established

either by showing that the defendant had actual knowledge of an

act in furtherance of the conspiracy occurring in the Southern

District of New York or that the defendant could have known or

contemplated that an act in furtherance of the conspiracy would

occur in the Southern District of New York.  In assessing what

the defendant knew or could have known or contemplated, you may

consider any experience or background of the defendant that you

determine relevant."

MR. KLINGEMAN:  I thought you used the modifier

"reasonably" before "could have known" and I think you should.

THE COURT:  Let me try reading it again.  I think I

just omitted it.

"Venue can be established either by showing that the

defendant had actual knowledge of an act in furtherance of the

conspiracy occurring in the Southern District of New York or

that the defendant reasonably could have known or contemplated

H3D9LEBF

1     that an act in furtherance of the conspiracy would occur in the

2     Southern District of New York.  In assessing what the defendant

3     knew or could have reasonably known or contemplated, you may

4     consider any experience or background of the defendant that you

5     determine relevant.

6              MR. SHIN:  Your Honor, a couple of comments.

7              First, I wouldn't want the -- first of all, we have no

8     objection to splitting that out into a separate sentence, "you

9     may consider" clause in that sentence.

10             THE COURT:  Yes.

11             MR. SHIN:  I'm concerned that the jury may read that

12    as meaning you may only consider what follows, the experience

13    or background.  So could we perhaps include you may consider

14    experience or background of the defendant that you determine

15    relevant or any other, something like --

16             THE COURT:  How about, "You may consider all facts

17    including any experience or background of the defendant that

18    you determine relevant."

19             MR. SHIN:  That works, your Honor.

20             Just the other comment that we had, your Honor, is

21    that unless the note was written specifically with respect to

22    the conspiracy charge.

23             THE COURT:  It wasn't.

24             MR. SHIN:  Then we may also need to have a version of

25    this that applies to the substantive counts.

1    THE COURT:  It just was, "We would like to request

2    clarification on the definition of reasonably foreseeable as it

3    relates to venue."

4    May I make a suggestion just because this is -- we're

5    getting to the end of what is now deemed the day that I would

6    normally come and read the note to them and then send the

7    materials back and give them the answer at the same time but I

8    propose we send the transcript back in the meantime.

9    MR. SHIN:  Makes sense, your Honor.

10    THE COURT:  Any objection?

11    MR. KLINGEMAN:  No.

12    MR. CREIZMAN:  No objection.

13    THE COURT:  So I have a -- I'll ask my deputy to give

14    that to the court security officer to give to the jury; that

15    is, the agreed-upon transcript of the cross-examination of

16    Mr. Gross.

17    MR. SHIN:  So currently everything is framed in terms

18    of in furtherance of the conspiracy, I believe, the language

19    we've been discussing.

20    THE COURT:  Right.

21    MR. SHIN:  And so I think it may make sense to also

22    provide --

23    THE COURT:  What if we replace "conspiracy" with

24    "crime" and do it as a singular.  So I'll read it.

25    Venue can be established either by showing that the

H3D9LEBF

1    defendant had actual knowledge of an act in furtherance of the

2    crime occurring in the Southern District of New York or that

3    the defendant reasonably could have known or contemplated that

4    an act in furtherance of the crime would occur in the Southern

5    District of New York.  In assessing what the defendant knew or

6    reasonably could have known or contemplated, you may consider

7    all facts that the defendant knew that you may determine -- no.

8    Just a moment.  You may consider all facts including any

9    experience or background of the defendant that you determine

10   relevant.

11            MR. SHIN:  That sounds right to us, your Honor.

12            MR. KLINGEMAN:  The only thing I'd suggest we need to

13   do, however, is make -- remind the jury of the distinction

14   between venue for the conspiracy versus venue for the

15   substantive count as it pertains to Mr. Gross because the venue

16   related to the conspiracy is, as your Honor just indicated, any

17   act in furtherance of the conspiracy; whereas, the venue as it

18   relates to the substantive count relates to essential conduct

19   in furtherance of the conspiracy.

20            THE COURT:  So we can do the repetition of language

21   for the two, and replace crime rather than doing it as a

22   singular charge.  I think crime captures that.  The

23   instructions are clear that this is how you consider it with

24   respect to the conspiracy count, this is how you consider it

25   with respect to the substantive count.  But I'm willing to be

H3D9LEBF

1    redundant in the interest of time.  So I'll ask --

2            MR. SHIN:  Your Honor, just before you finalize and

3    call the jury out would it be possible for us to see a printed

4    version just to make sure we're all on the same page?

5            THE COURT:  Yes.  I'm just waiting to get an

6    incorporated version.

7            What are you proposing exactly, Mr. Klingeman?  So

8    what I just said earlier I'll reimport, in furtherance of the

9    conspiracy instead of in furtherance of the crime.  So what are

10   you proposing with respect to the substantive counts?

11           MR. KLINGEMAN:  As I recall the language that your

12   Honor has in the draft it's any act in furtherance of the

13   conspiracy.

14           THE COURT:  Well I changed that to crime.

15           MR. KLINGEMAN:  Right.

16           THE COURT:  So as to not have to distinguish it

17   between conspiracy and the substantive count.  You're

18   requesting that I make the distinction.  So for the conspiracy

19   I'll put -- for the conspiracy language I'll put back in "in

20   furtherance of the conspiracy."  What are you requesting with

21   respect to the substantive counts, in furtherance of the

22   essential conduct for the crime?

23           MR. KLINGEMAN:  Yes.  The same language that's in the

24   original -- your Honor's original instruction.

25           THE COURT:  It would read, as you're proposing, like

H3D9LEBF

this.  "As to the conspiracy counts, venue can be established

either by showing that the defendant had actual knowledge of an

act in furtherance of the conspiracy occurring in the Southern

District of New York or that the defendant reasonably could

have known or contemplated that an act in furtherance of the

conspiracy would occur in the Southern District of New York.

In assessing what the defendant knew or reasonably could have

known or contemplated, you may consider all facts, including

any experience or background of the defendant that you may

determine relevant.  As to the substantive counts, venue can be

established either by showing that the defendant had actual

knowledge of an act in furtherance of the essential conduct of

the crime occurring in the Southern District of New York or

that the defendant reasonably could have known or contemplated

that an act in furtherance of the essential conduct of the

crime would occur in the Southern District of New York.  In

assessing what the defendant knew or reasonably could have

known or contemplated, you may consider all facts including any

experience or background of the defendant that you may

determine relevant.

          MR. KLINGEMAN:  Yes.

          THE COURT:  Mr. Creizman no view?

          MR. CREIZMAN:  No view.

          THE COURT:  Mr. Shin, you wanted to look at it in

writing?

H3D9LEBF

1          MR. SHIN:  It sounded right but just it may be prudent

2   for all of us to look at it in writing.

3          THE COURT:  All right.  We'll print it.

4          MR. SHIN:  Thank you.

5          No objection from the government, your Honor.

6          MR. KLINGEMAN:  No objection.

7          MR. CREIZMAN:  No objection.

8          THE COURT:  All right.  So we should bring them out,

9   read the question, read the answer.

10          I think I propose sending a written supplement back as

11   well.

12          MR. SHIN:  No objection, your Honor.

13          THE COURT:  So if everybody agrees it would look just

14   like what you were handed.

15          MR. CREIZMAN:  No objection to that.

16          THE COURT:  Let's get the jury.

17          I'll also tell them that I'll bring them out at 3:15

18   to dismiss them.

19          (Jury present; time noted:  2:52 p.m.)

20          THE COURT:  Ladies and gentlemen, I did receive your

21   note which reads:

22          "Your Honor, we would like to request the following

23   transcript, cross-examination of Trevon Gross on March 7, 2017.

24          "We would also like to request clarification on the

25   definition of reasonably foreseeable as it relates to venue.

H3D9LEBF

1          "Kind regards."

2          Signed by juror no. 2 on behalf of the jury.

3          "P.S.  We request to be dismissed at 3:15 p.m. today

4    so juror no. 9 may attend her doctor's appointment.  Thank

5    you."

6          And my thanks to you, ladies and gentlemen.  We did

7    send in a copy of what you requested, the transcript of the

8    cross-examination of Trevon Gross.  And then I'm going to

9    provide a supplemental instruction with respect to your second

10   question.  I'll read it and we'll send copies back to you.

11         As to the conspiracy counts, venue can be established

12   either by showing that the defendant had actual knowledge of an

13   act in furtherance of the conspiracy occurring in the Southern

14   District of New York or that the defendant reasonably could

15   have known or contemplated that an act in furtherance of the

16   conspiracy would occur in the Southern District of New York.

17   In assessing what the defendant knew or reasonably could have

18   known or contemplated, you may consider all facts including any

19   experience or background of the defendant that you may

20   determine relevant.  As to the substantive counts, venue can be

21   established either by showing that the defendant had actual

22   knowledge of an act in furtherance of the essential conduct of

23   the crime occurring in the Southern District of New York or

24   that the defendant reasonably could have known or contemplated

25   that an act in furtherance of the essential conduct of the

H3D9LEBF

crime would occur in the Southern District of New York.  In

assessing what the defendant knew or reasonably could have

known or contemplated, you may consider all facts including any

experience or background of the defendant that you may

determine relevant.

          And as I said, I'll send you back with copies of that

supplemental instruction.  And as you've requested in your P.S.

I'll bring you back out at 3:15 to dismiss you for the day.

Thank you so much.  You may return to the jury room.

          (Jury continues deliberations)

          THE COURT:  Counsel anything else?

          I will -- unless we hear from them sooner I will see

you at -- ready to go at just before 3:15.  Thank you.

          (Recess pending verdict)

          THE COURT:  It's 3:15 so I'll bring out the jury to

dismiss them, remind them of my instructions, tell them they're

not here tomorrow and that unless they hear further from me

they should come to the jury room by 9:30 on Wednesday to

resume their deliberations once they're all present and I'll

indicate that the court will be in touch through Ms. Nuñez if

there's any alteration to the Wednesday plan in light of the

weather.

          Anything else?

          MR. KLINGEMAN:  No, your Honor.

          MR. CREIZMAN:  No, your Honor.

H3D9LEBF

1        THE COURT:  All right.  Thank you.

2        Get the jury.

3        (Jury present)

4        THE COURT:  Thank you everyone.  It is 3:15.  You've

5   indicated, since you've not completed the process, you will end

6   for the day.  As I've told you, because of the snowstorm,

7   anticipated snowstorm, you will not be here tomorrow.  You will

8   resume your deliberations at 9:30 on Wednesday morning.

9        All my instructions continue to apply.  So please do

10  bear those in mind as we get through the snowstorm.  If you

11  don't hear anything from me, then presume we'll proceed at --

12  you'll proceed your deliberations at 9:30 once all of you are

13  present in the jury room on Wednesday.

14        Ms. Nuñez has your contact information.  She has

15  cellphones for all of you.  If you'd like to also leave an

16  e-mail address for her to reach you by e-mail in addition to

17  cellphone if need be she's going to leave a piece of paper for

18  you to do that.

19        If there does appear to be a continuing problem with

20  the weather, with transportation for Wednesday, you will hear

21  from me through Ms. Nuñez as soon as humanly possible either

22  tomorrow night or early Wednesday morning recognizing that many

23  of you have long commutes.

24        So with that I thank everyone for their

25  continuing work.  And we'll see you on Wednesday.  Good luck

H3D9LEBF

1   with the snowstorm.

2              (Jury excused)

3              THE COURT:  You may be seated.

4              So, I think we just need to establish a process for me

5   letting you know what I think has to happen on Wednesday if the

6   storm continues to be an issue.  I think I'll just need to make

7   an executive decision and I will use things like whether the

8   public school -- I think if the public schools are closed again

9   on Wednesday I will cancel deliberations for Wednesday as well.

10  If the public schools are not -- I mean I'll probably just use

11  that as my guide.  And hopefully we'll know by Tuesday --

12  tomorrow night where things stand and if not I'll make a call

13  early Wednesday morning.  All right.  And Ms. Nuñez will let

14  you know if we're off.

15             Anything else to address?

16             Hopefully see you Wednesday.  Good luck with the

17  storm.

18             (Adjourned)

19

20

21

22

23

24

25