H3F9LEBF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          15 Cr. 769 (AJN)

5   YURI LEBEDEV and TREVON GROSS,

6              Defendants.                 Jury Trial

7   ------------------------------x

8                                          New York, N.Y.
                                           March 15, 2017
9                                          8:33 A.M.

10

    Before:
11
                        HON. ALISON J. NATHAN,
12
                                           District Judge
13                                         And A Jury

14                         APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  EUN YOUNG CHOI
17       WON S. SHIN
         Assistant United States Attorneys
18       MICHAEL CHANG-FRIEDEN, Paralegal
         EMILY GRANT, Paralegal
19
    CREIZMAN, PLLC
20       Attorneys for Defendant Yuri Lebedev
    BY:  ERIC M. CREIZMAN
21       MELISSA MADRIGAL
         JONATHAN MICHAELSON, Paralegal
22
    KROVATIN KLINGEMAN, LLC
23       Attorneys for Defendant Trevon Gross
    BY:  KRISTEN M. SANTILLO
24  BY:  HENRY E. KLINGEMAN

25

H3F9LEBF

```
 1                    (In open court; jury not present)

 2                    THE COURT:  Good morning everyone.  Please be seated.

 3                    Ms. Madrigal, I know that Mr. Creizman is apparently

 4     stuck underground.

 5                    MS. MADRIGAL:  Yes, your Honor.

 6                    THE COURT:  But we'll proceed with you here, and

 7     everyone else --

 8                    MS. MADRIGAL:  Thank you.

 9                    THE COURT:  -- is here.

10                    So I think what I have is a combination of good news

11     and bad news.  I'll start with what I know about the sick

12     juror, backup, make a full record of the juror communications

13     over the day yesterday when the courthouse was closed for the

14     snowstorm, and then I'll hear from you as to any proposed

15     course of action.

16                    First, and just cutting to the end of the saga, the

17     sick juror did e-mail Ms. Nuñez early this morning saying,

18     "I'll be coming and will bring Advil with me to reduce the

19     fever until I can go in Urgent Care."

20                    So the good news is she's coming.  The bad news is

21     that she sounds like she's ill.

22                    Backing up.  Ms. Nuñez received an e-mail yesterday

23     afternoon from this juror indicating as follows, "I know we

24     don't have sick days and you probably don't know yet if we're

25     coming in tomorrow.  Unfortunately, I caught a stomach virus
```

1     and have been in bed since yesterday.  I have not been able to

2     clear out my car yet until my fever goes down but I also don't

3     want to give a lot of excuses either.  Please let me know what

4     I can do because I cannot go to Urgent Care now due the weather

5     conditions."

6             In response, at my direction Ms. Nuñez sent the

7     following message back to the juror.  "I'm sorry to hear you

8     aren't feeling well.  Hopefully, you'll feel better in the

9     morning.  The judge has told me to let all jurors know that the

10    jury will be deliberating as planned at 9:30 a.m. tomorrow.

11    Since all jurors are needed to deliberate, the judge asked that

12    everyone leave additional time as needed in light of the

13    weather to make it to the courthouse by 9:30.

14            "If you feel so ill in the morning that you think you

15    cannot make it, please let me know as early as possible.  In

16    that case the judge will need to schedule a call with you and

17    the lawyers and the court reporter."

18            The juror responded that she would be in touch with

19    Ms. Nuñez early in the morning with an update.  In the

20    meantime, I also asked Ms. Nuñez to inform all jurors that we

21    would be proceeding today at 9:30 and to please leave

22    additional time as needed in light of the weather to make it to

23    the courthouse by 9:30 a.m. today.  All but the sick juror

24    indicated that they would do so and they would be here.

25            At that point yesterday my -- my law clerk at my

H3F9LEBF

1   direction e-mailed all of you indicating -- informing you of

2   the sick juror issue that was developing and ordering you to be

3   here at 8:30 a.m. to address the issue as needed.

4         Mr. Klingeman responded requesting on behalf of

5   Mr. Gross that an alternate be summoned to the courthouse as a

6   precaution.

7         I asked Ms. Nuñez to contact the first and second

8   alternates, that's jurors nos. 13 and 14, to alert them to the

9   possibility that they might be needed to be here today.  As my

10  law clerk informed you by e-mail, the first alternate indicated

11  he was unable to be present today because his wife is

12  undergoing a colonoscopy and he is accompanying her.  The

13  second alternate indicated that she could be here and, as

14  noted, the information was conveyed to you by e-mail by my law

15  clerk.

16        This morning Ms. Nuñez received the e-mail from the

17  sick juror that I read when I sat down here a moment ago

18  indicating that she's coming but that she is sick.

19        In light of her indication of continuing sickness I

20  did direct Ms. Nuñez to instruct alternate number two to come

21  to the courthouse by 9:30 as a precaution.  She will be

22  directed to a separate room and not in contact with the other

23  jurors without further direction.

24        There is an additional piece of information that is in

25  this mix from a different juror.

H3F9LEBF

1          Another juror contacted Ms. Nuñez by e-mail yesterday

2     while the courthouse was closed for the storm.  She indicated,

3     as I believe that she did during jury selection, that she has

4     tickets on March 19, that's Sunday, I believe, to chaperone a

5     group of students to Montreal for eight days.  She said the

6     following, "Given the snowstorm and pacing of deliberations I'm

7     starting to get a little nervous so just wanted to put this on

8     your radar."

9          That's where we are.

10          So, I think the immediate question is whether I should

11     take some further steps with the sick juror to assess her level

12     of sickness, whether she should be sent into the jury room.  My

13     concerns are just the impact on her, whether she'll be able to

14     complete deliberations and, of course, the potential

15     contamination of other jurors.

16          So that I think is the immediate issue.  The other

17     juror issue I think puts in some perspective that if we're not

18     completed by this week we will certainly be in a position -- I

19     will have to excuse that juror, I believe, and we'll be in the

20     position of needing to either sub in an alternate at that point

21     depending on feasibility and the like after three additional

22     days of deliberation or proceed with eleven.  So that's where

23     we are.

24          Go ahead.

25          MS. CHOI:  Your Honor, I think the government's

H3F9LEBF

1    position would be that you should inquire further about the

2    status of the sick juror and determine whether or not, in

3    fact -- I mean it seems as though from the e-mail this juror is

4    feeling significantly better, at least not -- is not bedridden

5    anymore.  Obviously she's still under the weather.  But I think

6    if your Honor could make the -- make further inquiry as to how

7    she's feeling, whether or not she could continue deliberating

8    today or if she could go to the doctor and perhaps tomorrow and

9    it may be that she feels she could make some assessment about

10   that.

11          This is our concern about this.  The jury has already

12   had the case for over a day-and-a-half.

13          THE COURT:  Just to pause you.  I was thinking about

14   it.  It went to them at 1 p.m. on Friday.  They ended that day

15   at 4:40, I believe.  And then Monday 9:30 to 3:15 so not quite

16   a day-and-a-half at this point.

17          MS. CHOI:  Approximately a day-and-a-half, give or

18   take, sorry about the math.  But I think the point is they

19   would have to start all over again with the new jury in order

20   to do that.

21          Now we're in the situation which we don't know I think

22   that the other juror that suggested that she had the Sunday --

23   that stated she had the Sunday tickets has some concern but we

24   don't know what the other juror situations are and I think if

25   we start -- if there is a possibility that we'd have to start

1  all over again and then take out an alternate and then have --

2  have them have to start from square one, we're going to be in a

3  worse position in terms of making sure that we can go forward

4  than if we were to find out from this particular juror, the

5  sick juror, that she could potentially continue if she was

6  either given a little time this morning to go to the doctor or

7  even if it is to start tomorrow morning that's still less time

8  lost than to start all over from ground zero.  So that's the

9  government's view.

10        Obviously we don't have a good assessment, I don't

11  think your Honor knows either, with regard to, you know,

12  whether or not she's ill and could make other people sick.

13  That's obviously a concern.  But if it is, in fact, something

14  like the stomach flu those aren't bugs that usually last more

15  than a short period of time.

16        So I think the government, in the first instance,

17  would like further query of that particular juror.

18        This isn't the situation where she said she couldn't

19  get up out of bed and come here.  She's obviously, as all the

20  jurors have been, very diligent and conscientious and is coming

21  here on time despite the fact that she's under the weather.  So

22  I think we should at least query as to what -- how she's

23  feeling and whether or not she thinks she can continue today

24  before we make any decisions about whether or not to start the

25  jury off again with an alternate.

1           MR. KLINGEMAN:  Good morning, your Honor.

2           THE COURT:  Good morning.

3           MR. KLINGEMAN:  I agree with the government and the

4    Court about inquiring further of this juror to assess her

5    condition.

6           If, however, she's unable to continue I would urge the

7    Court to seat an alternate and continue the deliberations.

8    We're really running into a scheduling issue.  If we were to

9    take today off we would only have two more days this week.

10   Then we would likely lose the second juror your Honor has

11   mentioned.  So I would ask that we continue, make every effort

12   to continue the deliberations so that we have three full days

13   this week at our disposal.

14          THE COURT:  Mr. Creizman.

15          MR. CREIZMAN:  Yes.  I just arrived.  As I think

16   everyone in the court knows, I was stuck on a Metro-North

17   train, which is horrible.  I just can't get it out.

18          But if the alternate is seated, I think that the jury

19   has to be instructed they have to start over.

20          THE COURT:  They do.  They do.

21          The brief version, Mr. Creizman, to catch you up, is

22   that the juror is coming.  I think this is the highlight.  The

23   juror is coming.  But she apparently has a fever and wants to

24   get to Urgent Care when she can, wants to see a doctor when she

25   can.

H3F9LEBF

1           So my proposal, and at least with respect to this the

2     government and Mr. Klingeman agrees, I should take her into the

3     robing room with the court reporter and assess her level of

4     sickness and whether she feels like she can proceed for the

5     day.  If she can, then that's what we'll do.

6           And the question is what should we do if she can't?  I

7     do have an alternate coming as a precaution.  And that person

8     will be here and in a separate room until further instruction.

9     So that person will be here.

10           The additional piece of information is that another

11     juror, I believe mentioned this during selection, but has

12     tickets to Montreal on Sunday to chaperone a group of students

13     for eight days.  So if they're not done by Friday we will lose

14     another juror because given that she flagged this issue I have

15     to excuse her.

16           So the difficult question is if the sick juror is

17     unable to proceed today.  And the choice of whether to pause

18     deliberations, let her go get some care and resume with her; or

19     proceed with an alternate; or potentially, just putting all

20     options on the table, proceed with eleven, I think are what

21     we're faced with.

22           My concern with pausing deliberations or proceeding

23     with eleven at this point is that we will lose another juror

24     come this weekend.  So the more we delay deliberations I think

25     the more likely the eventuality that we lose another juror.

1          So I think to spin it out though I will have to

2     instruct the jurors if we do sub in an alternate that they must

3     restart their deliberations.  It will be after only the time

4     that they deliberated on Friday and Monday that will be lost.

5     If I were to bring in an alternate come Monday it's three

6     additional days of deliberation.  If we were to pause for half

7     a day or a day -- I mean this jury still has not had a full day

8     of deliberations and they need it, of course.

9          Ms. Choi.

10          MS. CHOI:  One other sort of pragmatic suggestion

11     which would be to just query if there are other foreseeable

12     conflicts over the course of the next week or so.  I think it's

13     just better for us to know which way this is going to go if

14     there is some concern that it could spill over into week two

15     and there are some other conflicts beyond the Sunday trip to

16     Montreal just so that we sort of get the full picture.

17          I mean obviously things like sickness we can't foresee

18     but there may be other issues that initially we didn't -- we

19     didn't or the jurors didn't think were going to really come to

20     be a real true conflict and you know I think we need to know

21     that, especially if, for instance, there are continuing issues

22     with childcare where people have to be dismissed at 3:30 or

23     other things where we've been -- I think your Honor has been

24     good about accommodating the jurors' schedules as best possible

25     but it may be the time to sort of figure out whatever else

4312

H3F9LEBF

1    might be on the horizon.

2            I'm just trying to be pragmatic here, your Honor,

3    because of the concern that you know already juror number one

4    had another issue which may not preclude him if he were to have

5    to sub in later but obviously we should be at least cognizant

6    of the real possibility that there could be other issues that

7    we'll need to deal with and then -- we can go to eleven but

8    obviously beyond that we can't really do, so.

9            THE COURT:  We can't do.  No.  That's right.

10           MR. KLINGEMAN:  I leave it up to you, your Honor,

11   whether to do that.  I completely sympathize with counsel's

12   point.  I wonder if this would invite some things that we don't

13   want to deal with.

14           I would suggest or request if your Honor could

15   consider reminding the alternates to make themselves available.

16   I'm not suggesting alternate no. 1's issue today is anything

17   but totally justifiable.  Having recently turned 50 myself, I

18   am completely sympathetic.  But the alternates are a critical

19   part of this and we may need them.  So if we want to send them

20   a hint to kind of be around, that be would great.

21           THE COURT:  Two of them now have a hint.  One of them

22   will be sitting in the courthouse this morning.  But we can

23   address -- we can address at some point today whether the other

24   two should be reminded of their potential continuing role.  I'm

25   certainly open to that.

1          We're hearing from a couple of jurors of just some

2     transportation issues.  Everybody appears to be on their way

3     but someone is on a train stuck on the tracks.  I don't know if

4     that's Mr. Creizman's train or not.  All of that to say we

5     might not have twelve by 9:30 in any event.

6          So we have agreement that I'll -- I will ask Ms. Nuñez

7     to grab the sick juror on her way in, ask her to come into the

8     robing room.  I'll speak to her with the court reporter to get

9     a sense of how sick she is and whether she can continue.  And

10    then I'll report back.  I guess I think we should come to --

11    probably should come to resolution on the -- use this time as

12    to how to proceed.

13          MS. CHOI:  It's a tricky one, your Honor.

14          THE COURT:  It sure is.

15          MS. CHOI:  I don't know if you -- I mean it's still I

16    guess 8:53, if you wanted us to stick around until she arrives;

17    if you wanted us to come back at 9:30, what you wanted us to

18    do.

19          THE COURT:  I'll have you stay.

20          MS. CHOI:  Okay.

21          THE COURT:  I'll have you stay.  I think I want to --

22    hopefully it will be futile but I think it's worth using this

23    time for me to come to resolution on what we'll do if she can't

24    proceed.

25          MS. CHOI:  I'm sorry.  I didn't mention that Mr. Noble

H3F9LEBF

1    is in fact also home sick with the flu so I hope your Honor

2    will excuse his absence.  It was a long four weeks.

3           THE COURT:  For everyone.

4           I guess -- I think my basic inclination, though I

5    think it's close, is if she can't proceed that we bring in the

6    alternate this morning with a standard instruction to the

7    jurors that they have to restart deliberations and -- as I say,

8    it's close.  Any additional time we build into the

9    deliberations this week increases the likelihood that they

10   don't get the job completed this week.  I'd rather have an

11   alternate come in now than on Monday.

12          MS. CHOI:  Understood, your Honor.

13          We should just see what her status is and keep our

14   fingers crossed.

15          THE COURT:  Mr. Creizman, what do you think if she's

16   unable to sit.

17          MR. CREIZMAN:  I believe that seating an alternate

18   would be appropriate just so that the jurors can get back going

19   with deliberations whether they -- even starting over again at

20   least I think it makes sense to keep this process going.

21          THE COURT:  Mr. Klingeman, I think you -- from what

22   you indicated you agree with that.

23          MR. KLINGEMAN:  Yes, please.

24          THE COURT:  If we're seating an alternate -- again, so

25   as to avoid any delay we should get agreement on the

1    instruction.  I have a sample from Pattern Jury Instructions,

2    Criminal Pattern Jury Instructions Treatise.  I don't know if

3    there is a Sand charge -- no.

4            The Pattern instruction reads, "One of your fellow

5    jurors has been excused and an alternate juror is replacing the

6    excused juror.  Do not consider the substitution for any

7    purpose.  Under the law the alternate juror must participate

8    fully in the deliberations that lead to any verdict.  The

9    prosecution and the defendants have a right to a verdict

10   reached only after full participation of the jurors whose votes

11   determine that verdict.  This right will only be assured if you

12   begin your deliberations again from the beginning.  Therefore,

13   you must set aside and disregard all past deliberations and

14   begin your deliberations all over again.  Each of you must

15   disregard the earlier deliberations and decide this case as if

16   those earlier deliberations had not taken place.  Now please

17   return to the jury room and start your deliberations from the

18   beginning."

19           Boy is that redundant when you read it out loud.  Let

20   me try a streamlined version.

21           A more streamlined version would make the basic point

22   only two times rather than four.  So, one of your -- the intro

23   language.  "Don't consider the substitution for any purpose

24   under the law.  The alternate juror must participate fully in

25   the deliberations that lead to any verdict.  The prosecution

1      and the defendants have the right to a verdict reached only

2      after full participation of the jurors whose votes determine

3      that verdict.  This right will only be assured if you begin

4      your deliberations again from the beginning.  Now please return

5      to the jury room and start your deliberations from the

6      beginning."

7                  MS. CHOI:  No objection from the government.  It makes

8      the point clear, I think, your Honor.

9                  MR. KLINGEMAN:  Agreed.

10                 MR. CREIZMAN:  No objection.

11                 MR. KLINGEMAN:  Your Honor, may I ask which number

12     juror are we talking about?  Actually I've never caught that.

13                 THE COURT:  I haven't said.  I can.  I wanted the

14     discussion to be in the abstract because I think hearing your

15     views without the specific juror in mind is -- you're entitled

16     to know but I did want to hear your views without telling you

17     which juror, and I have.  So it's juror number three.

18                 We have our plan.  I will speak to the juror as she

19     comes in the robing room with the court reporter and come back

20     to you with information and we've discussed how we'll proceed

21     if she's unable to proceed.

22                 Anything else folks?

23                 MS. CHOI:  Not from the government.

24                 MR. CREIZMAN:  No, your Honor.

25                 THE COURT:  All right.  Thank you.

H3F9LEBF

1          (Recess)

2          (In the robing room)

3          THE COURT:  Hi, Ms. Pico.  How are you?  Come have a

4     seat.  I know you're not feeling well.  I'm so sorry.

5          JUROR:  That's okay.  I just took two Advils.

6          THE COURT:  Does that help?

7          JUROR:  Yeah, to reduce the fever.

8          THE COURT:  So what I'm trying to gauge is whether you

9     can do this.  Obviously I don't want you to be harmed.

10          JUROR:  No.  But I found out that there was an Urgent

11     Care not far so if I know that my fever is getting worse I'll

12     let them know.  But I can comprehend.

13          THE COURT:  You can?

14          JUROR:  Yes.

15          THE COURT:  And you feel like you can keep going?

16          JUROR:  Yeah, I can.  I mean I already know my

17     decision and everything but we all got to go work together.

18          THE COURT:  Yeah, I don't want to hear where you are

19     in that.  But I'm very grateful for you and your commitment to

20     being here even though you are sick.  I'm sorry to hear that.

21     I'll ask just that you'll let me know if you can't continue.

22          JUROR:  No.  I know.  That's the same thing my parents

23     told me.  As long as I keep on top of the Advil and the hours I

24     have to take them I'll be fine.

25          THE COURT:  Maybe at the end of the day if you're not

H3F9LEBF

1   done you can go to Urgent Care.  Does that seem to be a

2   possibility?

3          JUROR:  Yes, because I found one when I got off the A

4   train but they weren't open.

5          What I was going to suggest is it possible I can get

6   like a Lysol because I know one of the jurors is pregnant and I

7   don't want to get her sick.

8          THE COURT:  Yeah, we'll get some Purell and if you

9   could just keep physically to yourself a little bit I think

10  that will help.

11         JUROR:  Yes, just to prevent her from getting sick.

12         THE COURT:  Of course.  We'll bring in -- Ms. Nuñez

13  has a variety of disinfectant products.  We'll bring those in.

14  Is there anything else that would make you comfortable?

15         JUROR:  Just staying with liquids for now and I'll be

16  fine.

17         THE COURT:  Thank you so much.  I'm really grateful.

18  Thank you, Ms. Pico.  You may return to the jury room.

19             (In open court)

20         THE COURT:  Good news.  She says she can continue.

21  She tried to get to the Urgent Care office before, but they

22  weren't open yet.  She's going to take Advil.  She's asked for

23  some disinfectant products and I'm hereby asking Ms. Nuñez.

24  She's concerned about the other jurors.  So we'll provide her

25  some Purell and if we have Lysol or wipes or the like so that

1    she can help make sure that no one else is infected.  She'll

2    continue taking Advil.  And I just ask that she let me know if

3    she thinks she can't make it and suggested that if they're not

4    finished their task by the end of the day she could go to

5    Urgent Care then and the like.  So that's where we are which is

6    good news.

7            Anything further?

8            MR. KLINGEMAN:  No, your Honor.  Thank you.

9            MS. CHOI:  No, your Honor.  I presume today obviously

10   if she needs to go to the doctor she should go to the doctor

11   but that your Honor generally would not be opposed to the

12   jurors staying later if they are all able to do so.

13           THE COURT:  I have now indicated that option for the

14   other two days they have sat.  If we get a note I'll remind

15   them that they should just let us know when they want to stop

16   for the day, I think I'll say at 5 o'clock, but if they want to

17   continue they should let us know.  I think we'll hear from

18   them -- I said to the juror I have to trust that she'll let me

19   know if she can't continue.  So we'll hear from them if not.

20           And if I don't hear from them by note or otherwise

21   then I'll just assume that they have that -- that they have

22   that information from the prior two times.

23           In light of where we are, I'll -- I'm prepared to

24   instruct Ms. Nuñez to tell the alternate who is either here or

25   on her way that she need not come.  Everyone agree?

H3F9LEBF

1             MR. KLINGEMAN:  Yes.

2             MR. CREIZMAN:  Yes, your Honor.

3             THE COURT:  Please let her know, Ms. Nuñez.  Thank

4    you.

5             Anything else?

6             MS. CHOI:  Just as a logistical matter.  The work goes

7    on.  We have court appearances later this week and I just

8    wanted to get a sense from your Honor how you wanted us to deal

9    with them, if you wanted us to ask for adjournments in

10   anticipation.

11            THE COURT:  I want people here at the drop of a dime.

12   So somebody has got to be available because I want no delay in

13   responding to questions.

14            MS. CHOI:  Understood.

15            So we will make appropriate adjournment requests.

16            THE COURT:  Yes.

17            I don't need all three of you but I need one of you.

18            MS. CHOI:  We're already down one so I think we would

19   prefer that all three of us be here or at least two so we'll

20   make the arrangements for that to occur.

21            THE COURT:  Okay.  All right.  Thank you everyone.

22            I think the only other thing I'd say is just again for

23   efficiency because we may face the alternate issue, you know,

24   if anyone wants to propose any different instruction if we need

25   to do that, also consider and know the relevant law with

H3F9LEBF

1    respect to when there might be good cause for proceeding with

2    eleven or agreement to proceed with eleven and the like.  Just

3    thinking through these eventualities will aid us if we need to

4    get there without producing any further delay.

5              MS. CHOI:  Understood, your Honor.

6              Would it be all right if Mr. Rosen could e-mail us

7    your proposed edited say-it-only-two-times-not-four-times and

8    then we'll go back to appeals and make sure there aren't any

9    issues with that and start exploring the eleven-juror issue.

10             THE COURT:  We'll docket what I read so everyone has

11   it and, as I say, that was done quickly.  I'm open to different

12   or better suggestions.

13             Thank you everyone.

14             MS. CHOI:  Thank you, your Honor.

15             THE COURT:  Wait to hear.

16             (Recess pending verdict)

17             (At 12:15 p.m. a note was received by the jury)

18             THE COURT:  We have a note from the jury which we'll

19   mark as Court Exhibit 5.

20             "Your Honor, we have a question with regards to

21   establishing 'venue' as it relates to both substantive and

22   conspiracy charges.  Is where the money is spent or where it

23   could be spent, based upon previous spending habits, a fair

24   measure in establishing venue?

25             "Best regards.

H3F9LEBF

1          "Juror no. 2 on behalf of the jury."

2          MR. KLINGEMAN:  Your Honor, would you mind repeating

3     that.

4          THE COURT:  Of course.

5          "We have a question with regards to establishing

6     'venue' as it relates to both substantive and conspiracy

7     charges.  Is where the money is spent or where it could be

8     spent, based upon previous spending habits, a fair measure in

9     establishing venue?"

10         Maybe what it makes sense for me to do is for me to

11    step down for a few moments and we all noodle a bit on an

12    appropriate response.

13         I wanted to raise one thing that was -- came into my

14    head after I left the bench earlier regarding something that

15    the juror who I met with said to me.  Of course there was a

16    court reporter, but I hadn't focused on this point because it

17    didn't pertain to whether she could sit or not.

18         She said at one point something like:  I know my

19    decision but we've all got to go work together.  And I said

20    immediately I don't want to hear that.  And she never said

21    anything further regarding her thinking or the jury's thinking

22    other than that statement.

23         I don't -- it doesn't change, in my view, anything

24    about how we are proceeding and I don't think it requires any

25    addressing otherwise but after I left the bench it started

H3F9LEBF

1    bugging me that I hadn't just included it in my recitation of

2    what occurred.  So I'll leave you with that.

3           I'll just -- we'll take this note, as I say, noodle

4    for a few moments, and then I'll come back for proposals as to

5    how to address.  All right.  Thank you.

6           (Pause)

7           THE COURT:  Just a moment.

8           If you have a proposal in the meantime, I'm happy to

9    hear it.

10          Mr. Shin.

11          MR. SHIN:  Your Honor, the government's position here

12   is that the question is either too vague or too ambiguously

13   written for us to I think precisely ferret out what the

14   question is and so I don't think we can give a definitive

15   answer unless we make assumptions about what they're saying,

16   which we're reluctant to do.  So we would propose that your

17   Honor simply instruct them to refer to the jury instruction and

18   the charge, the supplement that was given the other day as

19   being the guidance for their question.

20          Just in terms of what I mean by the question being

21   ambiguous, they say where the money is spent.  What is the

22   money?  There's lots of different money in this case.  And in

23   terms of where it's spent or could be spent.  And then the

24   further measure question also is quite vague.  And so given

25   that we can't have a back and forth asking them to clarify

H3F9LEBF

1    specifically, I think the best -- the most prudent course would

2    be to refer back to the previously given charges.

3              THE COURT:  Mr. Klingeman.

4              MR. KLINGEMAN:  Your Honor, I would submit that the

5    spending of bribe proceeds is not an act in furtherance of

6    either the act of bribery or the crime of bribery or a

7    conspiracy to participate in bribery.  And, therefore, I would

8    answer the question in the negative.

9              And I would refer to the specific jury instructions

10   that your Honor gave in the initial round and I would state the

11   following and I'm quoting from the jury instructions.

12             "As to the conspiracy charges, venue is proper in this

13   district if any of the defendants or their coconspirators

14   caused any act or event to occur in this district in

15   furtherance of the offense and it was reasonably foreseeable to

16   the defendant that you are specifically considering that the

17   act would take place in the Southern District of New York."

18             Likewise, I would quote the same or the related

19   language with respect to substantive offenses as you did when

20   you further instructed the jury on Monday.

21             THE COURT:  Mr. Creizman, do you have a view?

22             MR. CREIZMAN:  I actually concur with Mr. Klingeman.

23   I didn't understand the question so well but it sounded like

24   what they're saying is spending bribe proceeds.

25             THE COURT:  Well let me say -- I am inclined toward

H3F9LEBF

1    the second part of Mr. Klingeman's suggestion.  I am not

2    inclined toward directly answering because it is, as you

3    suggested, Mr. Klingeman, making an assumption as to the

4    meaning that -- and I'll just tell you the way that you just

5    suggested it be read is not how I had read it.  So I think at

6    least multiple meanings are available.

7         I agree with the government's basic point that it's

8    vague.  I am also generally cautious around anything that would

9    intrude on the jury's ultimate function of finding facts and

10   applying the facts to the appropriate statement of the law.

11        So I think -- my suggestion would be some -- and I'll

12   get your reaction, is to adopt the second part of

13   Mr. Klingeman's suggestion and say -- read the question, here

14   is how I can respond to it.  First, in the jury charge at page

15   64, lines 12 through 15, the Court instructed as to the

16   conspiracy charges that venue is proper in this district if any

17   of the defendants or their coconspirators caused any act or

18   event to occur in this district in furtherance of the offense

19   and it was reasonably foreseeable to the defendant that you're

20   specifically considering that the act would take place in the

21   Southern District of New York.

22        As to the substantive counts and maybe language like:

23   I remind you in both instances, on pages 64, line 18 to page

24   65, line 2:  The Court instructed venue is proper in this

25   district provided that any act in furtherance -- in furtherance

4326

H3F9LEBF

1   of the essential conduct of the crime took place in the

2   Southern District of New York.  Again, the defendant you are

3   considering need not specifically intended to cause an act --

4   need not have specifically intended to cause an act or event to

5   happen in this district or even know that he was causing an act

6   or event to happen here as long as it was reasonably

7   foreseeable to the specific defendant that such act would occur

8   in this district and it, in fact, occurred.

9          And then I was thinking of reminding them of the

10  supplemental instruction along the lines of finally in

11  assessing the defendant's knowledge or what the defendant --

12  well maybe just leaving it at that.

13         I was considering just reminding them of the

14  instruction that in assessing what the defendant knew or

15  reasonably could have known or contemplated you may consider

16  all facts including any experience or background of the

17  defendant that you may determine relevant.

18         My thinking, Mr. Shin, rather than just sending them

19  back to all of the instructions, I wonder if they're sort of

20  focused on the supplemental instruction about knowledge -- I'm

21  not sure.  I'm just not sure.  And so I was thinking of, just

22  as Mr. Klingeman suggested, reminding them of the basic concept

23  which is you have to find an act in furtherance of the

24  conspiracy occurred in the venue -- in the Southern District.

25  And that's sort of point one.

1          I've fleshed out the meaning of what's required with

2     respect to the defendant's knowledge and I've told them that

3     they can consider any facts they deem relevant in making that

4     assessment.

5          MR. SHIN:  Your Honor, that approach is sensible.

6     Just if I could make a couple points.  I think the Court is

7     already there.  But I just want to note for the record an

8     additional reason not to attempt to more specifically answer

9     this ambiguous question is that I think the answer, even if we

10    interpreted the question any particular way, is not as

11    clear-cut as Mr. Klingeman would suggest.  So even if, for

12    example, specific spending of bribe proceeds was not itself in

13    furtherance, it could of course be relevant if it

14    established -- if it helped the jury establish that a defendant

15    or a particular coconspirator was located in the district at

16    the time other acts in furtherance of the conspiracy took

17    place.

18          But let's not go down this road and so I think your

19    Honor's proposal is the correct one of reminding the jury of

20    the basic principles in the current charge.

21          We agree it's not necessary to specifically read from

22    the additional instruction that your Honor gave the other day.

23    But perhaps your Honor could just remind them that that is also

24    there even if your Honor -- even if your Honor doesn't read

25    from it, just so that they don't forget that there's more than

1     just the current instruction number 42 on pages 64 and 65, that

2     there is also the supplement that your Honor read the other day

3     and also provided them a copy of.

4                THE COURT:  Go ahead, Mr. Klingeman.

5                MR. KLINGEMAN:  Your Honor I would ask that the Court

6     simply read the two sentences that your Honor began with.  In

7     other words, the sentence that begins on page 64, line 12 and

8     ends on line 15 as well as the sentence that begins on page 64,

9     line 18 and ends on line 20.  And I would ask the Court not to

10    read --

11               THE COURT:  On line 20 at "York" basically.

12               MR. KLINGEMAN:  "York," period.  And I would ask the

13    Court not to read the balance of that paragraph, either in

14    whole or in part.

15               The question, leaving aside any ambiguity, appears to

16    focus on whether spending is relevant to venue and the sentence

17    that follows on -- beginning on line 20 goes to intent and

18    knowledge and foreseeability which your Honor not only

19    addressed in the initial jury charge but in the supplemental

20    jury charge.  And I don't want to draw any undue attention to

21    that since that is not the focus of this particular question.

22    I'd rather confine it to whether spending is relevant to either

23    an act or an essential act in furtherance of the crimes which

24    is in answer to the question.

25               I also -- I'm concerned now that we haven't defined

H3F9LEBF

1    essential act, the jury hasn't asked for a definition of

2    essential act, but we haven't defined that for them.  But I'm

3    willing to leave that alone if we just go with the two

4    sentences your Honor is inclined to give and not more.

5              MR. SHIN:  Your Honor, on that point, the government

6    is fine with reading -- with respect to the conspiracy charge,

7    lines 12 through 15.  However, I think it's an incomplete

8    reminder, your Honor, on the substantive charge if your Honor

9    were to only reads lines 18 to 20.  The following sentence,

10   which includes the concept of reasonable foreseeability, it

11   mirrors the additional language that we've all agreed the Court

12   should read under the conspiracy charge.

13             So in lines 12 to 15 for the conspiracy charge, it's

14   all written as one sentence.  It just happens to be split up

15   into two sentences with respect to the substantive charge.  And

16   so if we're going to give them the whole sentence on the

17   conspiracy charge I think it makes sense to give them both

18   sentences on the substantive charge because that's the entire

19   concept.

20             I would also note that, again, to the extent we're

21   parsing their question, they asked whether money is spent or

22   could be spent based upon previous spending habits.  To me that

23   does incorporate some question about reasonable foreseeability,

24   right.  Because they're asking about previous spending habits

25   and to what extent that's a fair measure.  And, again, in light

1    of that, I think it makes sense to give them the full sentence,

2    lines 12 to 15 and the full -- both sentences, lines 18 through

3    the top of the next page on the substantive charge.

4              I agree with Mr. Klingeman.  There is no need at this

5    point to go down the road of attempting to define what an

6    essential -- essential conduct of the crime is, given that we

7    haven't gotten that question.

8              THE COURT:  I think what I'll do is -- I think I will

9    read parallel from both the conspiracy charge and the

10   substantive charge and so I would say something like -- and no

11   one thinks this charge is wrong and so, again, I don't want to

12   over-assume their meaning or fail to answer their question by

13   assuming a meaning when there are other meanings available.

14             So I will read -- what I intend to do is read the

15   question and say something like:  I remind you of my full venue

16   instruction on pages 64 and 65 as well as the supplemental

17   venue instruction that I gave you on Monday.  And I do remind

18   you -- and maybe I'll say something like I'll point you to two

19   provisions from the charge to bear in mind as you consider the

20   question you've asked, and then read lines 12 through 15 and 18

21   through line 2 on page 65.

22             Again, just to repeat.  I'll read the question.  I'll

23   say that in response I do remind them of my full venue charge

24   on pages 64 through 65 of the original jury charge.  I remind

25   them of the supplemental charge in response to their question

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4331

H3F9LEBF

1   on Monday.  I do specifically point them to bear in mind the

2   following passages as they go about answering the question they

3   have posed, that they consider, and then I'll read lines 12

4   through 15 on page 64 and line 18 through line 2 on page 65.

5          MR. SHIN:  No objection from the government.

6          MR. CREIZMAN:  No objection.

7          MR. KLINGEMAN:  Okay.

8          THE COURT:  I'm asking Ms. Nuñez to get the jury.

9          Just a second.

10          We had discussed if we got a note to just indicate

11   that, as with Friday and Monday, as to when they end their

12   deliberations, leave that to them to decide and put out a note

13   if they'd like to stop at 5, if they'd like to keep going

14   beyond that, they may so indicate in a note.  Everyone agree to

15   that?

16          MR. KLINGEMAN:  Yes.

17          MR. CREIZMAN:  Yes.

18          MR. SHIN:  Yes.

19          (Jury present)

20          THE COURT:  Thank you.  Everyone may be seated.  Good

21   afternoon, ladies and gentlemen of the jury.  I did receive a

22   note from you which reads, "Your Honor we have a question with

23   regards to establishing 'venue' as it relates to both

24   substantive and conspiracy charges.  Is where the money is

25   spent or where it could be spent, based upon previous spending

4332

H3F9LEBF

1    habits, a fair measure in establishing venue.

2             "Best regards, Juror no. 2 on behalf of the jury."

3             My response to the question is, first, that I remind

4    you of my full venue instructions on pages 64 to 65 of the

5    charge as well as the supplemental instruction that I gave you

6    on Monday.

7             I'll point you to two provisions from the charge to

8    bear in mind as you do the whole charge, as you consider the

9    question you've asked.

10            First, I remind you that in the jury charge on page

11   64, lines 12 through 15, I instructed as to the conspiracy

12   charges that venue is proper in this district if any of the

13   defendants or their coconspirators caused any act or event to

14   occur in this district in furtherance of the offense and it was

15   reasonably foreseeable to the defendant that you are

16   specifically considering that the act would take place in the

17   Southern District of New York.

18            As to the substantive counts, I remind you that on

19   page 64, line 18 to page 65, line 2, I instructed you that

20   venue is proper in this district provided that any act in

21   furtherance of the essential conduct of the crime took place in

22   the Southern District of New York.  Again, the defendant you

23   are considering need not have specifically intended to cause an

24   act or event to happen in this district or even known that he

25   was causing an act or event to happen here as long as it was

H3F9LEBF

1  reasonably foreseeable to that specific defendant that such act

2  would occur in this district and it, in fact, occurred.

3          So that is the response I have to your question and

4  I'll ask you to take that back with you to your deliberations.

5          One point to note as you return.  Your lunch is being

6  brought in as you sit here so you can continue your

7  deliberations over lunch.

8          With respect to the end of the day, as I indicated

9  last Friday and on Monday, I leave the decision to you as to

10 when the day ends.  If you need to end at 5, simply put out a

11 note indicating that is the case.  If you determine that you'd

12 like to continue your deliberations beyond 5, please just so

13 indicate in a note.

14         Thank you so much.  Enjoy your lunch.  And thank you

15 for your work.

16         (Jury resumed deliberations)

17         THE COURT:  Matters to take up?

18         MR. SHIN:  Nothing from the government.

19         MR. CREIZMAN:  No, your Honor.

20         MR. KLINGEMAN:  No, your Honor.

21         THE COURT:  Thank you, everyone.  We'll wait.

22         (Recess pending verdict)

23         (At 4:33 p.m. the jury returned a note)

24         THE COURT:  I received a note from the jury just

25 indicating that they want to be dismissed at 5 p.m.

H3F9LEBF

1        It says, "Your Honor, I would like to request to be

2   dismissed at 5 p.m. as our deliberations will continue into

3   tomorrow, March 16.  Thank you.  Juror no. 2 on behalf of the

4   jury."

5        So that's where we are.  Sorry to say I'll just ask

6   you to in back at 5 of 5 for their dismissal.

7        Any matters to take up, counsel?

8        MR. KLINGEMAN:  No, your Honor.

9        THE COURT:  All right.  Thank you so much.

10        MR. KLINGEMAN:  Your Honor.

11        MR. CREIZMAN:  I'm sorry.  Is there a time that we

12   shall appear tomorrow morning?

13        THE COURT:  I want to joke:  Does it matter what I

14   say, but I recognize that you claim to have been stuck on a

15   train underground.

16        MR. CREIZMAN:  I have an alibi witness as well.

17        THE COURT:  I think there is no reason -- there is

18   nothing necessitating our being here any earlier than 9:30.  I

19   mean obviously I'll be here earlier than 9:30.  I guess -- why

20   don't we say 9 in the event we face any issues in the morning

21   with a non-arriving juror.

22        MR. CREIZMAN:  I could do that.

23        THE COURT:  You'll do your best, I guess.

24        MS. CHOI:  Sorry, your Honor.  You want us in the

25   courtroom?

H3F9LEBF

1          THE COURT:  You just need to be as you were all day.

2          MS. CHOI:  Okay.

3          THE COURT:  Accessible starting at 9 so that if we

4     have -- I can gather you quickly if we have an issue to deal

5     with.  Okay.

6          MS. CHOI:  Yes.

7          THE COURT:  Anything else?

8          MS. CHOI:  No.  Thank you.

9          THE COURT:  See you in half an hour -- less than that.

10         Mr. Creizman, less than that.

11         (Recess)

12         THE COURT:  Anything to take up, counsel?

13         MR. KLINGEMAN:  No, your Honor.

14         THE COURT:  Bring in the jury.

15         (Jury present)

16         THE COURT:  Thank you, everyone.

17         Members of the Jury, I did receive your note

18    indicating that you'd like to be dismissed at 5 o'clock today

19    to resume deliberations tomorrow morning.  So I'm here to

20    dismiss you.  I do ask you, of course, to continue to bear in

21    mind my instructions.  No communications with each other or

22    anyone else about the case outside of your deliberations, no

23    research about the case or communications of any kind about the

24    case.  And continue to keep an open mind until you return to

25    your deliberations with your co-jurors.

H3F9LEBF

1          The process tomorrow is the same as it was today.

2     Please be in the jury room by 9:30 and please begin your

3     deliberations as soon as all twelve of you are present and

4     you'll indicate to me through the day if you have any notes,

5     and that's it, wait to hear from you.

6          Thank you so much for your hard work.  I wish you a

7     good night.  See you tomorrow.

8          (Jury excused)

9          THE COURT:  Anything to take up?

10          MR. KLINGEMAN:  Just a question, your Honor.

11          Would the Court let us know which juror is the one who

12     has indicated she's got a potential trip beginning Sunday?

13          THE COURT:  Yes.  It was juror no. 5.

14          MR. KLINGEMAN:  Thank you.

15          THE COURT:  All right.

16          So we will be prepared for any issues that we need to

17     take up by 9 tomorrow and, obviously, if we have any matters

18     that come in over the evening or early morning regarding the

19     jurors I will let you know but hopefully I'll see you when we

20     first hear from the jury.

21          Have a good night everyone.

22          (Adjourned)

23

24

25